HUNTER v. WATSON et al.

The true construction to be given to the Registration Act is, that the failure of a grantee to record his deed, does not absolutely, and without exception, avoid the deed as to third persons.   The failure to register only protects *bona fide* purchasers for a valuable consideration.

Open and notorious possession of real estate by one having an unrecorded deed for it, is evidence of notice to a subsequent purchaser of the first vendee's title.   But the possession must exist at the time of the acquisition of title or deed of the subsequent vendee, from the common vendor.

A deed made to a man who is dead at the time of its execution, is a nullity.

The word " heirs " in a conveyance, is not a word of purchase, carrying title to the heirs, but only qualifying the title of the grantee.

A deed made under and in pursuance of a general power of attorney, which authorized the attorney " to make and execute conveyances," and where the purchase money was received by the principal, cannot be assailed for the want of authority to execute it.

The Registration Act only protects purchasers ; creditors, as such, are not included within its provisions.   But a judgment creditor, purchasing at his own sale, without notice, is a *bona fide* purchaser within the Act.

The knowledge of an agent, in the course of the agency, is the knowledge of the principal, and the agent cannot be forced to disclose it.   But if the agent acquires information apart from, or independent of such source, he is not protected from disclosing it.

APPEAL from the Sixth District, County of Sacramento.

The facts as stated in the opinion of the Court, are as follow :

This was an action of ejectment to recover a lot in Sacramento city. The title was in one William Glenn, against whom, on the eleventh of October, 1855, plaintiff recovered judgment in the District Court for Sixth District, and on the twenty-sixth day of July, 1856, the plaintiff became the purchaser, at Sheriff's sale, made under the judgment. It seems that this property was owned by one McPherson, who sold it in payment of a debt to one Forbes, and that Forbes, desiring to hide it from his creditors, procured a deed of it to be made to Glenn. Glenn left the country, and made a power of attorney to his brother, Thomas Glenn, to transact his business, sell his lands, etc., with power of substitution of other attorneys ; that Glenn sold the lot to Knox by deed dated twentieth of September, 1851.   The deed was not recorded. Knox died in 1854.   On the twenty-second day of March, 1856,

Glenn executed a deed to Knox and his heirs, which was recorded twenty-seventh of March, 1856.   Knox's administrator, Hubbard, was in the notorious possession of the property at the time of the plaintiff's purchase.   Two questions are made by the record :

1.  Was the possession of the administrator of Knox notice of the unrecorded deed from Glenn to Knox ?

2.  If not notice at the time of the obtaining of the judgment of the plaintiff, was the recording of the deed to Knox and his heirs before the sale under execution, sufficient ?

Plaintiff had judgment, and defendants appealed.

*Crocker & Robinson* for Appellants.

1st.  The plaintiff having purchased the property at a sale on his own judgment, is not a purchaser within the rules of equity, so as to enable him to claim notice of outstanding titles.

When a judgment creditor purchases at the Sheriff's sale on his own judgment, no notice to him of the equity of third persons is necessary, as he is not entitled to protection as a *bona fide* purchaser, as he pays no new consideration.   Arnold *v.* Patrick, 6 Paige, 316 ; Williams *v.* Hollingsworth, 1 Strobbart Eq. 103 ; Bush *v.* Bush, 1 Strobbart Eq. 379 ; Kirbay *v.* Dillard, Speer's Eq. 20 ; Shultz *v.* Carter, Speer's Eq. 542 ; 1 Prin. Williams, 278 ; Rep. Temp. Fairb. 28 ; 3 Hare, 416 ; Beaver *v.* Filson, 8 Barr, 327 ; 1 Story's Eq. Juris., sec 410, note 1 ; 2 Story's Eq. Juris., sec. 1503, *b.*

A purchase by a third person stands on a very different footing in this respect, from a purchase by the plaintiff in the judgment.   2 Binney, 46.

So also a creditor who takes real estate in payment of his debt, is not a purchaser for value, so as to entitle him to protection against prior equities.    Dickson *v.* Tillinghast, 4 Paige, 215 ;   Roman *v.* Adams, 1 S. & M. Ch. 45, 49 ;  Powell *v.* Jeffries, 4 Scammon, 387 ; 11 Wend. 533 ; 1 Dw. Ch. 103.

A purchaser at Sheriff's sale, with or without notice, acquires no better title than the debtor had.   Freeman *v.* Hill, 1 Dev. & Batt. Eq. 389 ;  Polk *v.* Gallant, 2 Dev. & Batt. Eq. 395.

A judgment creditor is bound by all prior equities, and so is a pur-

chaser at Sheriff's sale under the judgment.    Bank of S. C. *v.* Campbell, 2 Rich. Eq. 179, 191.

Equity controls the general lien of a judgment so as to protect the equitable interests of others.    2 Paige, 266.

And it will limit the lien to the actual interest the debtor has in the estate.    4 Paige, 15 ;  6 Paige, 315.

A purchaser of the judgment debtor, before judgment, whose deed is not executed until afterwards, will thus be protected against the judgment.  6 Paige, 315, 316, note *a*; 1. P. Wm. 278; 2 Wash. C. C. R. 78.

Where the agent of the judgment creditor purchased the property at Sheriff's sale, but paid no money, applying the amount as a credit on the judgment, he cannot protect himself against a prior equity, of which he had no notice.    Swayze *v.* Burke, 12 Peters, 11, 24, 25.

That the purchaser had secured the payment of the purchase money, is not sufficient to protect him against prior equities.    7 J. C. R. 65.

To entitle a party to protection in equity as a *bona fide* purchaser, he must have actually paid the purchase money and received his deed, before notice of the equity.    6 Barb. S. C. R. 19, 26 ; 1 Paige, 280 ; 11 Barb. S. C. R. 490.

In equity, the lien of a judgment does not attach upon the mere legal title to lands in the debtor, where the equitable title is in another ; and a judgment creditor seeking to make it liable will be restrained, as he loses nothing, having parted with no money.    1 Paige, 280 ; 11 Barbour S. C. R. 490 ; 6 Barbour S. C. R. 19, 26.

2d. The plaintiff had notice of the title of Knox, under whom defendants hold, or at least sufficient facts were known to him to have put him upon inquiry.

He had actual knowledge of the possession of the premises by Knox, and those holding under him.    He was told at the sale, before it was struck off to him, that he was not buying a title.    There was a deed upon record from Glenn to Knox, and though it was executed after the decease of the latter, it was sufficient to put him upon inquiry.

If, at the sale, the purchaser receives sufficient information to put him upon inquiry, it is sufficient notice.    1 Paige, 283.

Information from third parties is sufficient to put the party upon

Hunter *v.* Watson.

inquiry.    3 Metcalf, 406 ; 1 Cowen, 622 ; 2 Dev. & Batt. Eq. 360 ; Hardin, 37.

But the most material evidence of notice, is the actual possession of the property by Knox and those holding under him, and the fact that this possession was known to the plaintiff, before his purchase.

This question has been before this Court in several cases, and in some of them, the well-established rule that possession is notice to all persons of the title of the possessor, has been set aside.    We think so clear and evident a departure from this ancient rule of property, upon so important a question, making, as it does, so great an invasion upon the rights of property, should be promptly overruled by this Court, before its evil effects have been too extensively felt.

The ancient rule which we contend for, has been established by the following authorities :

English : 2 Vesey, 440 ; 16 Vesey, 249, 254 ; 17 Vesey, 433 ; 1 Jac. & Walker, 181 ; 1 Hare, 43 ; 2 Ball & Beatty, 416 ; 4 Dow Parl. Rep. 245 ; 2 Sch. & Lefroy, 583 ; 1 Merivale, 282 ; 2 Powell Mort. 576, note.    Maine : 32 Maine, 286 ; 8 Greenleaf, 94.    New Hampshire : 4 N. H. Rep. 397 ; 5 N. H. 181 ; 2 Foster, 500. Vermont : 2 Vermont Rep. 544.    Massachusetts : 3 Pick. 149 ; 3 Mass. 575.    Connecticut : 3 Conn. Rep. 146.    New York : 3 Paige, 421 ; 5 J. C. R. 39 ; 2 Paige, 300 ; 10 Barb. S. C. R. 354 ; 6 Paige, 383.    Pennsylvania : 3 S. & R. 283 ; 5 Binney, 132 ; 1 Wharton, 303, 318 ; 7 Watts, 261, 382 ; 5 W. & S. 427.    Delaware : Harrington Rep. 48.    Ohio : 13 Ohio Rep. 408.    Indiana : 4 Blackford, 94, 383.    Illinois : 5 Gilman, 186.    Missouri : 1 Missouri Rep. 77.    Kentucky : 1 Littell, 350 ; 1 Monroe, 193, 235 ; 2 J. J. Marshall, 164, 178.    Maryland : 1 Mar. Ch. Dec. 523 ; 10 Gill. & Johns. 316.    New Jersey : Saxton, 441 ; 2 Green. Ch. 143. Georgia : 2 Georgia Decisions, 205.    Alabama : 12 Ala. Rep. 17. South Carolina : 2 Hill Ch. 421.    Mississippi : 11 S. & M. 21. Tennessee : 2 Humph. 335.    United States : 10 Howard, 348 ; 375 ; 1 McLean, 22.

Such a train of decisions certainly ought to settle the law, if decisions and precedents are to have any force and effect.

But even under the rules laid down by this Court in previous cases,

that possession is notice of equitable titles not in a condition to be recorded, we contend the judgment of the Court below should be reversed upon this point alone.

We contend, therefore, that the defendants, who hold under Knox, come under the rule laid down by this Court in Ellis v. Jeans, 7 Cal. Rep. 409, and Bryan v. Ramirez, 8 Cal. 461.

It has been held, and we think very properly, that an unrecorded deed is evidence of an equity equal to a title bond.  4 Dana, 260.

As to the last deed executed by Glenn to Knox, after the decease of the latter, though it could not operate as a conveyance to him, yet it is good as a conveyance to his heirs.  12 Mass. 447 ; 1 Pick. 27 ; 8 Greenleaf, 148 ; 2 Peters, 201 ; 14 Missouri, 420 ; 2 Brock. 156.

But even if it should be held void as a conveyance, it is still good as an executory contract, and the heirs could compel the execution of a proper deed to them.   When there is an intention to convey, and a good consideration given, but the legal title has not passed, equity will compel the execution of a proper instrument.   1 Hoffman Ch. Rep. 382 ; 1 Bramb. 63.

And such deed would relate back to the original contract of sale. A deed made in pursuance of a contract, is good by relation, from the making of the contract.  1 John. Cas. 81, 85.

3d.  The District Court erred in ruling that Welty, plaintiff's attorney, need not testify as to notice of Knox's title, acquired from parties other than the plaintiff.

This was clearly error, for the law is well settled, that notice of title in a third person, given to an attorney or agent, is notice to the principal.   Fulton Bank v. N. Y. & S. Canal Co., 4 Paige, 136 ; Griffith v. Griffith, 9 Paige, 316 ; Bank of U. S. v. Davis, 2 Hill, 451, 461 ; Sutton v. Dillaye, 3 Barb. S. C. R. 529 ; Mech. Bank v. Seton, 1 Peters, 309.

It cannot be claimed that Welty was privileged from testifying as to this notice, received, not from his principal, but from third persons ; for it is a well established rule, that the privilege of an attorney is restricted entirely to communications from his client, and does not apply to facts derived from other parties.   7 East. 357 and note ; 1 Phillips' Ev. 162.

*Moore & Welty* for Respondent.

The main question involved in this case, viz., was defendants' possession of the premises, if known to plaintiff before his purchase, sufficient to put him, a subsequent purchaser for a valuable consideration, upon inquiry, and charge him with notice of defendants' interest? It is admitted that plaintiff has a perfect legal title to the premises, and he must prevail in this action unless he had a sufficient notice of defendants' claim, to place him in the position of a fraudulent purchaser. Under our system, there are two kinds of notice; actual notice in fact, and record or constructive. At common law, actual notice was necessary in every case; but the rule was found to be inconvenient and troublesome, and in this country it has been changed in nearly every State, by the passage of registry laws. Among the earliest legislation of this State, after its organization, was the passage of an Act concerning the Execution, Acknowledgment and Registration of Conveyances. The twentieth section of this law provides that " Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this Act, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, or any part thereof, when his own conveyance shall be first duly recorded." (Wood's Dig., p. 103, sec. 26.) This language is plain, positive and comprehensive. If a person holds a " subsequent " deed " duly recorded," the only questions that can arise in reference to the validity of his title, are: 1st. Is he a purchaser " in good faith " ? and, 2d. Has he paid a " valuable consideration " ?

Who are " subsequent purchasers in good faith " ? or, in other words, what acts or knowledge, on the part of a subsequent purchaser, will make him a purchaser *mala fides?* In this case we are not to inquire whether the defendants held equities of which plaintiff had notice, but did plaintiff have any knowledge of this unrecorded deed prior to his purchase ; for we submit there is a wide difference between the principles governing a case, where both parties claim legal title from the same grantor, one by virtue of a deed which he has neglected to record, and the other by deed duly recorded, and a case where one party claims the legal title, and the other equities, which by law he

was unable to register and give notice of.   In the former case, the first purchaser has so far violated and disregarded the positive requirements of the law, that his grantor has been enabled to perpetrate a fraud, by making a second conveyance to an innocent purchaser.   It was his duty to have recorded his deed; and if he did not, and the property is again conveyed, he alone must suffer the penalty which the statute imposes, while, on the other hand, the party holding an equitable claim, has done all the law requires.   If he were to record his equity, it would do him no good, as it is not such an instrument as the law authorizes to be recorded, and would therefore impart no notice to subsequent purchasers.   This class of claimants, the law has ever regarded with much favor.   They have been guilty of no wrong, and as a matter of necessity, and of justice to them, the Courts in many of the States have said, that open and continued possession on their part, is sufficient to put subsequent purchasers upon inquiry.   But this rule does not apply to claims under unrecorded deeds.   The law positively requires deeds to be recorded, in order to make the conveyance valid, as against subsequent purchasers.   The statute has provided a public repository for all evidences of change of title, and it is the duty of every man to comply strictly with this salutary provision of the law. When two parties claim title to the same premises, from the same grantor, the question will be (if the case is free from fraud) as to priority of record.   This view has been sustained by this Court, by repeated decisions, and the distinction which we have drawn has been as often recognized.   The question was first presented in the case of Call *v.* Hastings, 3 Cal. Rep. 179 ; Mesick *v.* Sunderland, 6 Cal. Rep. 297 ; Stafford *v.* Lick, 7 Cal. Rep. 479 ; Ellis *v.* Janes, *Ib.* 409.

The decisions of this Court upon this point, stand not alone.   They are supported by nearly all the Courts in States where registry laws exist, and in England the old doctrine has been greatly modified.   21 Mo. Rep. 313.

In Rhode Island it has been decided that " open and continued possession of land by a person having an unrecorded deed, and claiming land as his own, is not presumptive notice of the existence of such deed, to subsequent purchasers.   Harris *v.* Arnold, 1 Rhode Island Rep. 125 ; see also Withers *v.* Carter, 4 Gratt. (Virg.) Rep. 407.

In 32 Maine, 287, cited by appellants, the Court said: " Prior to the Revised Statutes, visible possession of an improved estate, by the grantee under his deed, was implied notice of the sale to subsequent purchasers, although his deed had not been recorded. But the Revised Statutes, (chap. 91, sec. 26) introduces a new principle, and abolishes constructive notice, arising from possession under a deed not recorded, and requires actual notice of such deed to subsequent purchasers, to prevent them from holding the estate."

In the case of Jackson *v.* Van Valkenburgh, (8 Cow. 254) Judge Woodworth reviewed the authorities upon this question, and cited, with approbation, Jolland *v.* Strainbridge, ( 3 Vesey, 478 ) in which Lord Alvanley said: " The person who takes subsequently must know exactly the condition of the prior deed, and must have intended to defraud."

In support of this doctrine, the same learned Judge quotes the language of Lord Hardwicke, in Hine *v.* Dodd, (3 Atk. 275) as follows : " Nothing short of fraud, or clear and undoubted notice, will do."

In Jackson *v.* Burgett, (10 John. 457) actual notice of the unrecorded instrument was held necessary ; so also in Dunham *v.* Dey, 18 John. 555.

In Dey *v.* Dunham, (2 John. Ch. Rep. 182, 190) Chancellor Kent again reviews this doctrine at length, and agrees with Lord Hardwicke in Hine *v.* Dodd, that "A notice that was to break in upon the Registry Act, must be such, as with the attending circumstances will affect the subsequent purchaser with fraud. A notice merely to put the party upon inquiry, will not be sufficient." See also Jolland *v.* Strainbridge, 3 Ves. 478 ; Great Falls Co. *v.* Worster, 15 New Hampshire, 412.

Mr. Justice Scott, in Beattie *v.* Butler, (21 Mo. Rep. 321) discusses this question at some length, and after a review of the authorities, concludes as follows : " But the possession of the tenant, if notice at all, was only notice of his own right, and not that of his reversioner ; this seems to be the settled doctrine." See also 7 Watt. 261 ; 1 Atk. 589, 490 ; 4 Binn. 184 ; 2 Sumner, 557, and 6 Sergt. & Rawle, 184.

This brings us to the consideration of another question raised by

appellants, viz.: Is plaintiff, who purchased at Sheriff's sale, upon his own judgment, a *bona fide* purchaser for a valuable consideration? In some of the earlier decisions in England and this country, a distinction was drawn and maintained between a purchaser who was also the execution creditor, and a purchaser who was a stranger to the judgment and execution. In the former case it was said that the purchaser took the property for a pre-existing debt, paying no new consideration, and must therefore take subject to the outstanding equities in the hands of third persons, while the latter paid the purchase money on the day of sale, and took the property discharged of all equities of which he had no notice. But upon what just reasoning the distinction was maintained, it is not easy to discover. Let us state an example: A advances money to B, for which he obtains a judgment; he issues execution and levies upon B's property; he attends the sale, and being willing to give more than any one else, becomes the purchaser. But because he paid the purchase money to B in advance, and not to-day, he is not a *bona fide* purchaser for a valuable consideration, and must take the property with some secret trust, or have his title defeated altogether by the production of an unrecorded deed, of which he had no notice. But, says the old theory, A takes the property for a pre-existing debt, and parts with no new consideration. This is not the case; the law takes the property, and an officer of the law sells it to the highest bidder. A purchases the property, not as creditor, but as purchaser. The character of creditor ceases, and the rights of purchaser immediately attach. In this State the statute not only permits, but invites, the creditor to purchase; then why should he not stand upon the same footing of other purchasers?.

There is no sound reason why he should not. Modern Courts have abolished the old distinction, and the rule now is, " that no difference exists between a purchaser at private sale, and one at Sheriff's sale." Robinson v. Rowan, 2 Scammon Rep. 501.

The case of Scribner's Lessees v. Lockwood, (9 Ohio, 184) is directly in point. Parker's Lessees v. Miller *et al.*, 9 Ohio Rep. 108; Jackson v. Post, 15 Wend. 288; Graham v. Samuel, 1 Dana, 166.

Our theory is, that the plaintiff here stands upon the same footing

with other purchasers, and that his lien and title relate back to the date of the entry of his judgment, and must prevail over defendants' unrecorded deed.   This was the doctrine of this Court in the case of Smith v. Randall, 6 Cal. Rep. 47.

In the case in 2 Binn. 52, relied upon by appellants, Judge Breckenridge says: " The purchaser at a Sheriff's sale, is as much a purchaser, and as much entitled to protection under a want of notice, as any other.   The consequences would be monstrous, if the law would suffer him to be disturbed by secret trusts, or to be affected by the culpable negligence of those who were under a moral and legal obligation to do something which would save others from laying out their money without consideration."

The case in 11 Mo. 77, cited by appellants, is an authority directly against them.   The Court says: " This case does not differ in principle from those of Hill v. Paul, (8 Mo.) and Reed v. Austin's Heirs, (9 Mo. 722).   The doctrine of these cases is, that the lien of a judgment prevails over a prior unrecorded deed, and this may be regarded as the settled law of this Court."

" The lien of a judgment will prevail over a prior unrecorded deed. That the deed was executed before the debt was contracted, cannot alter the case ; the credit may have been given upon the very lots conveyed by this unrecorded deed."   Frothingham v. Stacker, 11 Mo. 78 ;   Reed v. Austin's Heirs, 9 Mo. 722;   Hill v. Paul, 8 Mo. 479 ; Helm v. Logan's Heirs, 4 Bibb. 78.

In the case of Coffin v. Ray, (1 Metcf. 214) C. J. Shaw said : " The attachment of real estate is considered as in the nature of a purchase, and the attaching creditor is affected with notice of a prior conveyance, in the same manner as a purchaser."   Priest v. Rice, 1 Pick. Rep., p. 167 ; Semple v. Bird, 7 Serg. & Rawle, 285.

The record contains one other question which we will briefly notice. On the trial in the Court below, appellants called as a witness, D. W. Welty, one of plaintiff's attorneys, and among other things, asked him whether he (witness) had any knowledge of defendants' interest prior to plaintiff's purchase.   This was objected to.   The Court sustained the objection, and this is assigned as error.   See Greenleaf's Evidence, vol. 2, p. 311, sec. 244 ; 7 Cal. Rep. 450.

Hunter *v.* Watson.

BALDWIN, J., delivered the opinion of the Court—FIELD J., concurring.

We have given the important questions raised by the record, our most serious attention.   The amount involved in this particular case is not considerable, but the principles are of the greatest importance. The questions are not free from difficulty ; indeed, they are full of embarrassment, arising not only from several decisions of our own Court, which, to say the least, do not seem altogether consistent, and from the conflicting nature of the decisions in other States and in Great Britain.   Upon no subject is it more important that the law should be beyond doubt as to its construction, and simple and precise in its provisions.   And it may well merit legislative consideration, whether the Statutes of Registration should not be thoroughly revised, so as to secure uniform and certain rules for the disposition and protection of real estate in the future.

It is not necessary to review the various decisions of this Court. The questions we are considering turn upon the proper construction of the twenty-fourth and twenty-sixth sections of the Recordation Act of 1850.   This is the language of the twenty-fourth section, as amended in 1855 :  " Every conveyance of real estate, and every instrument of writing, setting forth an agreement to convey any real estate, or whereby any real estate may be affected, proved, acknowledged, and certified in the manner prescribed in this Act, to operate as notice to third persons, shall be recorded in the office of the Recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto, without such record."

The twenty-sixth section is as follows:  " Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this Act, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded."

It would seem that the Legislature designed, in the twenty-fourth section, to hold that the recording of the deed was necessary to give notice of it to third persons, and supposed that the want of such notice

invalidated the deed as to them ; but that afterwards the twenty-sixth section was inserted, which was intended to qualify and limit the effect of this provision.    The twenty-sixth section is taken from the legislation of New York on that subject, and is in the words of a section of a statute of that State.    Taking both sections together, it seems evident that the true construction is, that the failure of a grantee to record a deed, does not absolutely and without exception avoid the deed as to third persons ; for, if it did, it is impossible to give effect to the words " *bona fide* purchaser for a valuable consideration."    The failure to register only protects this class of persons.    Under the registration laws of England and the American States, (which did not contain this limitation) Courts of Equity engrafted this exception, and held, in numerous cases, that the purchaser of lands, knowing them to have been before sold by the vendor, though the deed was not recorded, was not within the protection of the statute.    (Sec. 10, John. 457) The Irish Registry Act makes no exception or qualification, but the record is the only notice ; and, in some of the States—Massachusetts, Maine, and perhaps others—*actual* notice is the only substitute for the notice by the registry.

The question arises, who is a *bona fide* purchaser, or what is a *bona fide* purchase ?    And this inquiry has been the fruitful source of difficulty, and contention, and conflicting decision.    *A priori,* it might, perhaps, be considered not a little difficult to say that a party buying land in the possession of another, must *necessarily* be a fraudulent purchaser, especially when he buys with record proof before him of the ownership of his vendor.    It could scarcely be held that such a purchaser must necessarily know that the vendor had no title, and that the possessor had.    Some of the cases hold that mere possession is actual notice—and will not suffer any proof to be made to the contrary —other, and perhaps the greater number, hold that it is only a presumption of notice, which may be rebutted ; and others again hold that the possession is not so much notice of the title of the holder, as a circumstance which should put the purchaser on inquiry, and if he fails to inquire, he is no more protected than if he had inquired and ascertained the fact.

In New York the cases are by no means harmonious—the earlier

cases holding with more strictness to the doctrine of notice than those of later date.    It must be conceded, however, that the authorities, not only in New York, but elsewhere, are overwhelming to the point that possession is proof of notice—whether *prima facie* or absolute, it is not necessary to inquire here—of the title of the possessor.    This is the doctrine of the Supreme Court of the United States, and of every State in the Union, with the three or four exceptions.

It is urged against this array of authority, that this matter of possession *is a fact*, not a principle ; that the fact must have its force in different States or places, according to circumstances ; that this fact in England or Massachusetts, owing to local circumstances, has a significance which is denied by the circumstances prevailing here ; that in the older States titles are settled and easily understood, but that the reverse of this stable condition of affairs characterizes our younger and unsettled State ; and that, besides this, we have a statute unknown to those States, allowing the purchase of land in adverse possession ; that, in addition to this, much of the real estate of the country is held by disputed titles, and no considerable portion by no pretense of it.    The force of this argument is conceded ; but something may be urged on the other side.    Some latitude should probably be indulged in a new State, whose people, hastily gathered together, are, many of them, unfamiliar with their own laws ; and it is not strange that, under the peculiar circumstances which surround them, great negligence and laxity in the transaction of business, both in individuals and public officers, prevailed ; and hence much that may be attributed to ignorance, carelessness and accident, prevented the preservation and protection of land titles.    But, besides this, we do not see enough in these suggestions to induce us to disregard an array of authority so formidable.

We acknowledge the weight of the considerations of public policy which suggest that land titles should be made to depend upon written and record proof, with few exceptions, and to leave as little to parol proof as possible ; and especially do we acknowledge the paramount importance of establishing clear, precise and definite rules in respect to contracts and property ; such rules as furnish of themselves authen-

tic guides to Courts and juries, and give to the citizen certain ideas of his rights, and leave as little as possible to litigation or the discretion of the Judge.  But this policy addresses itself to the Legislature, and we cannot give effect to it in this case, in the face of a clear persuasion that the law, as it is written, is otherwise.

We must, therefore, hold, in obedience to this authority, that the open, notorious possession of real estate, by one having an unrecorded deed for it, is evidence of notice to a subsequent purchaser, of the first vendee's title.  *To guard against misapprehension, we say that the possession must exist at the time of the acquisition of title or deed of the subsequent vendee, from the common vendor.*

It appears by the express finding of the Court, that Knox, the vendee of Glenn, entered into possession of the premises after his purchase in 1851, and made permanent and valuable improvements ; that up to the time of his death, he was in possession, as was his administrator after his death, until after the purchase by Hunter.  The finding is, that the administrator was in " the notorious possession of the property at the time of the plaintiff's purchase."  But it is by no means clear, from the evidence, whether the Judge, in his finding, meant to assert that this was a personal possession, or possession by a tenant or tenants ; for the finding is that defendants hold under a lease from Knox's administrator.  When the lease commenced does not appear.  The other evidence introduced to show knowledge by Hunter of the deed from Glenn to Knox, was, taken alone, clearly insufficient.  Wyatt *v.* Burnell, 19 Vesey, 435 ; Jolland *v.* Strainbridge, 3 Vesey, Jr., 478 ; Scott *v.* Gallagher, 14 S. & R. 333.

The deed of 1856 may be laid out of the question.  It was made after the death of Knox, and though made to him and " his heirs," the word " heir, " is not a word of purchase, carrying title to the heirs, but only qualifying the title of the grantee.  A deed to a dead man is a nullity.

The deed of 1851, at the instance of Forbes, is attacked.  The deed was executed under a power from Glenn, very general in its terms, and evidently intended to give to the attorney authority to act for the principal in respect to the latter's businesss in California ; it

Hunter v. Watson.

authorized the attorney "to make and execute conveyances." The money was received by Forbes, and the execution of the deed seems to have been approved by Glenn. We think, therefore, that this deed cannot be assailed for want of authority to execute it. It was not recorded.

If Hunter had legal notice of this deed, we think it was enough to defeat his purchase.

The Statute of California, already cited, only protects purchasers; creditors, as such, do not seem to be included within its provisions; but a judgment creditor, purchasing at his own sale, without notice, is a *bona fide* purchaser within the Act. The cases are not agreed upon this subject, but the weight of authority and the reason of the rule are as we have stated it. 4 Cowen, 599; 15 Wend. 588; 8 *Ib.* 620; 5 Mo. 387; 8 Ala. 866; 9 Ohio, 184; 1 Barr, 24.

Upon the trial, Mr. D. W. Welty, the attorney for the plaintiff, was examined as a witness for the defendant, to prove that while he was acting as agent for plaintiff, he ascertained the facts in relation to the title or claim of Knox to this property. Though this examination was not very regular, yet we are inclined to think the witness should have answered the general question, or protected himself by his privilege or that of his client. It is clear that the knowledge of the agent in the course of the agency, is the knowledge of the principal; and while the attorney is not permitted to disclose the confidential communications of his client, yet if he acquires information apart from any such communications, he is not protected from disclosing it. We do not understand that the witness was required to state any facts derived from statements of his client, but merely to state facts coming to his knowledge from independent sources.

The judgment is reversed, and the cause remanded for a new trial.

I dissent, for reasons which I shall file hereafter.

TERRY, C. J.