Lincoln Savings Bank, Plaintiff, *v.* Mary Schneider et al., Defendants.

(Supreme Court, Kings Special Term, January, 1919.)

Deeds — deed to dead man a nullity — where description in referee's deed in foreclosure is erroneous — when motion to compel purchaser to take title denied.

> A deed to a dead man is a nullity.
>
> Where the description in a referee's deed in foreclosure following that of the mortgage is presumably erroneous in that the first course runs so as to produce a divergence, which, when continued to the end of the first course, results in carrying the easterly line of the property in question nearly four feet east of the point where it should be, and it is evident from the survey submitted, that buildings now standing on

the lot adjoining said property on the east, encroach substantially thereon, a motion to compel the purchaser to take title will be denied and the referee directed to return to the purchaser the deposit made by him upon signing the terms of sale, with interest.

A quit-claim deed made to the mortgagor more than three years after his death and long after the date of the mortgage foreclosed which he made to plaintiff, is ineffective to confer upon the defendants, the mortgagor's heirs-at-law, any title that the owner of the adjoining property might be supposed to have in the triangular strip.

MOTION to compel the purchaser at a foreclosure sale to complete his purchase.

Hector McG. Curren, for motion.

Michael M. Helfgott, in opposition.

BENEDICT, J. This is a motion to compel a purchaser at a judicial sale to complete his purchase. It is resisted on account of an alleged defect in the mortgagor's title to the premises described in the complaint and judgment and in the deed which the referee tendered. This description purports to cover a parcel of land which is not described by any street number, but by the following description in the mortgage executed by one David Schneider, viz.: "All that certain lot, piece or parcel of land, with the buildings thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows: Beginning at a point on the northerly side of Cook street, distant one hundred and forty (140) feet and four (4) inches westerly from Bogart street, and running thence northerly, parallel with Bogart street, one hundred (100) feet; thence westerly, parallel with Cook street, twenty-five (25) feet; thence southerly, parallel with Bogart street, one hundred (100) feet, part of the way

Supreme Court, January, 1919.        [Vol. 105.

of the same through the centre of a party wall to the northerly side of Cook street, and thence easterly along Cook street twenty-five (25) feet to the point or place of beginning.'' This description presumably was erroneous in that the first course runs northerly '' parallel with Bogart street '' one hundred feet instead of running at right angles to Cook street, the intersection of the two streets not being produced by the meeting of two lines running at right angles to that point. This divergence when continued to the end of the first course results in carrying the easterly line of the property in question three feet and nine inches to the east of the point where it would be if the easterly line ran at right angles to Cook street. Such a divergence produces too serious a situation to be disregarded. The plaintiff's counsel contends that it is cured by the words of the description wherein the westerly line of the property in question runs '' southerly parallel with Bogart street one hundred (100) feet, part of the way of the same through the centre of a party wall to the northerly side of Cook street.'' This, however, is not sufficient, I think, to overcome the difficulty which exists as to the easterly line of the lot, even if we are prepared to accept it as a correct principle in reference to the westerly line. It does not necessarily follow that the two side lines must be regarded as parallel with each other either in regard to that part of the westerly line which runs through the centre of the party wall or as to both lines throughout their entire length. It is evident from the survey submitted that the buildings now standing on the lot adjoining the property in question on the east encroach substantially on the latter property. There is no evidence before the court as to the length of time during which these encroachments have stood. They cannot be disregarded unless we are prepared

to adopt the plaintiff's contention that the easterly line of the property in question does not run parallel with Bogart street, but runs at right angles to Cook street, and as has been shown such a contention is untenable.

An attempt was made by means of a deed, dated November 24, 1917, to confer upon the defendants any title that the owner of the property upon the west of the premises in question might be supposed to have in the triangular strip which was created by running the westerly line parallel with Bogart street instead of running it at right angles to Cook street. This quitclaim deed was, however, executed to David Schneider as grantee more than three years subsequent to the time of his death. It is, therefore, without any force or effect, and it does not gain any force or effect as to his heirs-at-law, because it was made to David Schneider and not to his heirs-at-law, who are not named in the deed. A deed which designates a person incapable of taking is void for want of a grantee. Thus a deed to a dead man and his heirs is a nullity. *Hunter* v. *Watson,* 12 Cal. 363; *Morgan* v. *Hazlehurst Lodge,* 53 Miss. 665. So a deed to the estate of a deceased person is void. *Simmons* v. *Spratt,* Fla. 1887, 1 So. Rep. 860. By the common law, nothing passed to the heirs under a grant to a deceased person. *Dougherty* v. *Edmiston,* 7 Fed. Cas. No. 4025; Brunn. Col. Cas. 194. Moreover, if the deed could be presumed to have any validity as conveying title to Schneider's heirs-at-law, it was not made until long after the date of the mortgage which Schneider made to the plaintiff, and therefore any title which his heirs might have derived through the deed was not subject to the mortgage, nor would such new title be conveyed by virtue of the referee's deed, the heirs-at-law not having joined in the mortgage.

There is some attempt made on the part of the plaintiff to show title to the property in question by adverse possession, but, as has been recently pointed out by the Court of Appeals, titles by adverse possession are in disfavor with persons contemplating the purchase of property and with the courts, except in the clearest and most indisputable cases. *Crocker Point Assn., Inc.,* v. *Gouraud,* 224 N. Y. 343.

I have reached the conclusion upon the entire record that the court ought not to compel the purchaser in the present case to accept the title tendered to him by the referee. The motion to compel him to take it is therefore denied, with ten dollars costs, and the referee will be directed to return to the purchaser the sum of $417.50, deposited by him upon signing the terms of sale, together with any interest which said sum may have earned while on deposit.

Ordered accordingly.