[Civ. No. 5058. Second Appellate District, Division One.—July 15, 1927.]

FIRST NATIONAL BANK OF LA HABRA (a Corporation), Plaintiff, v. W. W. CALDWELL, Defendant, Cross-complainant and Respondent; ELVA MAY BEER et al., Defendants, Cross-complainants and Appellants.

FIRST NATIONAL BANK OF LA HABRA (a Corporation), Plaintiff, v. JOE MARCELL ANNECHINI, Defendant, Cross-complainant and Respondent; ELVA MAY BEER et al., Defendants, Cross-complainants and Appellants.

Owens & Wingert for Appellants.

Howard S. Lewis and Clarence E. Fleming for Respondents.

McLUCAS, J., *pro tem.*—Defendants and cross-complainants Elva May Beer and Leslie P. Beer appeal from judgments rendered in favor of defendants and cross-complainants Caldwell and Annechini, except from that part of said judgment discharging the First National Bank of La Habra from liability as escrow-holder. By stipulation of the parties, the two cases were tried together, and by further stipulation the cases were consolidated on appeal.

On the seventh day of June, 1923, Elva May Beer and Leslie P. Beer deposited with the First National Bank of La Habra their deeds conveying to W. W. Caldwell and Joe Marcell Annechini each a two per cent of the entire mineral rights in certain real property situated in Los Angeles County, California, which property the Beers had previously sold, retaining one-sixth of the oil rights. They deposited therewith their escrow instructions covering such deeds, agreeing to a delivery thereof to Caldwell and Annechini upon the payment of $15,000 in cash. On the same day Caldwell and Annechini each deposited with the same bank the sum of $1,000, each giving their written escrow instructions as follows:

"To the First National Bank of La Habra.

"I, herewith hand you $1,000.00 later I, will deliver

you $8000.00 additional, this money is for your use when you can deliver me a deed, executed by Elva May Beer and husband, conveying 2% of the oil rights of Lots 87, 89, 91, 93 and 94 Dunn, Smith & Cornell's Addition, in Los Angeles Co., Calif. I have this day marked my initials in lead pencil on this deed to identify it. I am to be furnished a certificate of title to show that the Grantors of within deed, reserved ⅙ interest in the oil right of this property, and further that said interest has not been conveyed by them, nor incumbered in any way. And that they still hold this interest. Excepting the 2% interest sold to myself, and 2% sold to Joe Marcell Annechini in this escrow.

"We are to be charged only with the expense of recording our deed, and the new ownership fee on this certificate of title. It is understood that certificate of title shall be guaranteed for at least $4500. a per cent of the interest conveyed, and shall be extended to show the deed conveying 2% groww oil interest to us, on record.

"We agree to deposit the additional $8000.00 with you at such time as the Title Company reports the title to the above interest is as called for above, in the event that we fail to make this additional deposit, you are to deliver the within $1000.00 to Elva May Beer and her husband, as liquidated damages to them."

The bank thereupon ordered the certificate of title from the Los Angeles Title Insurance Company. On June 25th the title company gave the bank a preliminary report, and on July 9th, a further report as follows:

"(This exhibit is on the letterhead of the Los Angeles Title Insurance Company.)

"Los Angeles, Cal. July 9th, 1923 at 8:00 a. m. In Reply refer to order 234360 (Pencil notation on said document 'recd July 13–23')

"First National Bank, La Habra, California, Gentlemen: We have made an examination of the title . . . and from such examination find that on January 28, 1922 Elva May Schandoney was vested with the fee title to said property, free from encumbrances.

"By a deed dated April 21st, 1922, recorded April 26th, 1922 in Book 937, Page 353 of Official Records, Elva May

Beer who acquired this title as Elva May Schandoney and Leslie P. Beer, her husband executed a deed for said property to Albert L. Tilton, which deed contains the following:

"Excepting therefrom one-sixth ($\frac{1}{6}$) of all the mineral rights which the above Elva May Beer is to retain and which if oil is found on any of the above lots or in any pool of lots which the above lots or parcels of land happen to be in, mineral rights in this deed means, oil, gas, or any hydrocarbon substance which may be found on any of the above described property.

"A further examination of the title to said property subsequent to January 28th, 1922 shows that the said Elva May Beer has not conveyed, encumbered or suffered any encumbrances of her interest in said property reserved by the above mentioned deed.

"Awaiting your further instructions, we are, . . . "

This latter report was copied by the bank and sent to both Caldwell and Annechini with the following letter, on July 13th:

"In connection with the escrow wherein you are buying an oil interest from Mrs. Elva May Beer.

"We are herewith enclosing you a copy of the report as to the title of this property made by the California Title Insurance Company, of Los Angeles, dated July 9, received by us today.

"It is the writer's opinion that if we can obtain a formal certificate of this company to the facts as set out on this report, with an additional statement that, the rights described in the deed to you from Mrs. Beer had been conveyed to you, and that this deed was of record, it will comply with your instructions to us.

"When you were here we prepared a copy of this Beer deed but find you failed to take it with you, thinking possible you might wish to consult with your attorney before closing this am sending this copy.

"Mrs. Beer is anxious to get her money, and would appreciate it if you would make the additional deposit to complete purchase price at once, at which time we will attempt to complete matters with as little delay as it is possible."

Upon the eighteenth day of July Caldwell and Annechini deposited the further sum of $8,000 each with the bank. On July 19th the bank transmitted to the title company a copy of the deeds which the Beers had placed in escrow, and ordered a certificate granted in the amount of $9,000 as to each deed, showing the two per cent interest of oil rights described in each of said deeds vested in the grantee. On July 25th the title company acknowledged receipt of the foregoing, and stated:

"The only guarantee this company can issue is one that will show that Beer is the owner of the interest retained in the deed to Albert L. Tilton, dated April 21, 1922, and recorded April 26th, as follows:

"Excepting therefrom one-sixth of all the mineral rights which the above Elva May Beer is to retain and which if oil is found on any of the above lots or in any pool of lots which the above lots or parcels of land happen to be in, mineral rights in this deed means, oil, gas or any hydrocarbon substances which may be found on any of the above described property; and that such interest has not been conveyed or incumbered by the owner. If such a guarantee will be satisfactory, kindly advise, and we shall proceed."

The foregoing letter was shown to Caldwell and Annechini. It thus appears that the title company, on July 25th, refused to issue the guarantee as required by the escrow instructions, though willing to issue a certificate of title for the land and oil rights without the guarantee of $4,500 a per cent of the oil rights. Notwithstanding this refusal of the title company to issue a guarantee certificate, the bank, with the consent of all parties, continued its efforts to secure said certificate, and on several occasions reported to Caldwell and Annechini that the certificate would be issued within a few days. On September 14th Owens & Wingert, attorneys for appellants Beer, addressed a letter to Annechini in which appears the following: "We understand that the First National Bank of La Habra will, if it has not already, receive a Certificate of Title covering this land and showing 16-⅔ of the production of this lease vested in Elva May Beer and Leslie P. Beer. The reservation of the land royalty contained in the deed from Elva May Beer and Leslie P. Beer, to Albert L. Tilton is not stated clearly and they have employed us to bring an action to reform

the instrument so as to conform to the intent of the parties at the time. From the evidence which we have at hand, there is no doubt in our minds but that we can reform the instrument to definitely express the intent of the parties at the time of the transfer.'' Finally, on September 21st, Caldwell and Annechini demanded the return of the money which had been deposited with the bank in escrow, under date of June 7th, on the grounds that a certificate of title had not been furnished within a reasonable time, and that the Beers were unable to furnish a certificate. The title company was immediately notified by the bank to discontinue work. Appellants demanded completion of the escrow and the payment of the money, and on October 11th the title company signified its willingness to issue the guarantee certificate. These suits were brought by the bank as escrow-holder, offering to deposit the money in court so that the conflicting claims of the respective parties might be determined, and that the bank be discharged of liability. Defendants and appellants Beer filed their answer and cross-complaint demanding that Caldwell and Annechini be compelled to complete the escrow instructions and pay over the moneys to defendants and appellants Beer. Defendants and respondents Caldwell and Annechini filed their answer and cross-complaint demanding judgment for the payment of the money deposited in escrow, and that defendants and cross-complainants Beer take nothing under their cross-complaint. At the trial the plaintiff bank was by order of court released from further liability as to the money; and the cases were tried upon the respective cross-actions.

The principal question before the trial court was whether the vendees, Caldwell and Annechini, were entitled to rescind their escrow instructions and to have the purchase money returned to them by the escrow-holder. This in turn depends upon whether the time elapsing between the 7th of June and the 21st of September is an unreasonable length of time for the examination of title and the issuance of the certificate and guarantee of title. The question of what is a reasonable length of time is one for the court or jury to decide upon all the circumstances of the particular case in issue. It is primarily a question of fact for the trial court. (*Hoppin* v. *Munsey*, 185 Cal. 678 [198 Pac. 398]; *Adams & McKee Land Co.* v. *Dugan*, 68

Cal. App. 226 [228 Pac. 681].) With respect to the work done by the title company, the principal difficulty seemed to be the question of the matter of policy whether or not the company would issue the guarantee of $4,500 a per cent of the interest conveyed, such form of guarantee not having been issued before by the title company. On July 25th the title company by letter signified their unwillingness to issue such form of guarantee. Appellants insist that all parties waived any right they may have had to rescind the agreement by proceeding with the escrow after receipt of the letter of July 25th from the title company, and that the Beers were then entitled to reasonable time to furnish the certificate to comply with the escrow instructions. Conceding, without deciding, this point, it is to be remembered that reasonable time is to be determined under all the circumstances of the case. The title company was ready to issue a certificate on the twenty-fifth day of July and, according to the testimony of the assistant secretary of the title company, in order to issue a guarantee it was further necessary to examine 421 instruments to learn whether or not the Beers had joined in a community lease, so as to determine whether the Beers had conveyed away their interest in the oil rights. Other witnesses testified that this work did not require a detailed examination of the various instruments, but merely required an examination of the names of the parties to those conveyances in order to determine whether the Beers had joined in executing them. But the evidence was in conflict as to the time required by a title company to issue a similar certificate and guarantee. A witness from the title company testified that anywhere from three weeks to four months would have been a reasonable time to issue a certificate, and that thirty days was the usual time. One witness testified that six months would be required; another, that thirty days would be sufficient, and in less time where a rush order is given in an oil deal. The witness from the title company testified that the additional search was completed about September 15th, and also testified that the company flatly refused to issue the guarantee up to the time it received notice about September 21st to discontinue the work, and would not have issued the guarantee at the time it received notice from the bank to proceed no further. ■ After a careful review

of all the evidence and circumstances in the case, we cannot say that there was no evidence to support the finding of the trial court that from the seventh day of June to the twenty-first day of September was an unreasonable length of time for the appellants to deliver a certificate of title and guarantee. It should further be understood that we are not deciding as a matter of law that three and one-half months is an unreasonable time for the delivery of a certificate and guarantee in all cases, but merely that under all the facts and circumstances in this case there was some evidence to support the finding of the trial court that such time was unreasonable. ■ Where such evidence appears to support the finding, as we have frequently held, the judgment will not be disturbed on appeal.

■ We see no force in appellant's argument that respondents had no right to rescind or cancel the escrow instructions. True, there was no time limit placed in the escrow instructions, and where no time is specified for the performance of an act required to be performed, a reasonable time is allowed. (Civ. Code, sec. 1657.) According to the finding of the trial court, such reasonable time had elapsed. Nor was the delay in performance capable of exact and entire compensation, as required by the provisions of section 1492 of the Civil Code. Neither is there any evidence of an offer of such compensation, as required by said section. ■ Respondents were under no obligations to offer to return the deeds as a prerequisite of rescission, since the deeds never came into their possession nor under their control. The placing of the deed in escrow did not make it an executed instrument. There had been no delivery to the purchasers and no transfer of title. (Civ. Code, sec. 1057; *Craig* v. *White,* 187 Cal. 489, 497 [202 Pac. 648].) At no time were respondents entitled to demand the deeds from the escrow agent until the conditions therein were performed, namely, the issuance of a certificate and guarantee. ■ Whenever a deed is deposited in escrow by the grantor to be delivered to the grantee upon payment by him to the escrow-holder of a sum of money to be by the latter delivered to the grantor upon the production by the latter of a satisfactory certificate of title, the escrow-holder is, as to the said deed and money, the agent of both parties until such time as the said satisfactory certifi-

cate is produced, and he thereupon becomes the agent of the purchaser as to such deed and of the seller as to such money. (*Shreeves* v. *Pearson*, 194 Cal. 699, 707 [230 Pac. 448]; *Hildebrand* v. *Beck*, 196 Cal. 141 [39 A. L. R. 1076, 236 Pac. 301].) ■ In the case at bar a satisfactory certificate of title necessarily included the guarantee. It was not produced before the rescission; hence the escrow agent never became the agent of respondents as to the deeds, and respondents were never entitled to their possession.

■ Appellants complain of error committed by the trial court in sustaining an objection to a question asked the assistant secretary of the title company as to whether in his opinion the time taken by the title company in issuing a certificate of title was a reasonable time. The objection was sustained on the ground that that was a matter for the court to decide. It has frequently been held that it is not error to admit such evidence for the reason that it is becauses a man's professional pursuit, his peculiar skill and knowledge in some department of science, not common to men in general, enable him to draw an inference, where men of common experience, after all the facts proved, would be left in doubt. (*Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 571 [147 Pac. 238]; *Sheehan* v. *Board of Police Commrs.*, 197 Cal. 70, 78 [239 Pac. 844].) In admitting such testimony the court does not empower the expert witness to decide the facts, nor is the court or jury bound to accept his assertion. (*Lemley* v. *Doak Gas Engine Co.*, 40 Cal. App. 146, 153 [180 Pac. 671].) But we observe no prejudicial error in the court sustaining the objection in the case at bar for the reason that the witness was, on cross-examination, permitted to testify, over objection, that the ordinary time to check the title to a piece of real estate would be anywhere from three weeks to four months, and for the further reason that we have been cited to no case holding it is error to exclude such evidence. ■ It is not mandatory that the trial court accept the conclusion of an expert, even though it is uncontradicted. (*Layne & Bowler Corp.* v. *Grogan*, 56 Cal. App. 31 [204 Pac. 252]; *Spencer* v. *Collins*, 156 Cal. 298 [20 Ann. Cas. 49, 104 Pac. 320].) In many jurisdictions such testimony has often been excluded. (*Estate of Iser*, 52 Cal. App. 405 [198 Pac. 1014].)

The burden of proof was sustained by respondents in furnishing evidence sufficient to support the findings of the trial court.

There being no prejudical error, the judgments are ordered affirmed.

Houser, Acting P. J., and York, J., concurred.