[Civ. No. 270. Fourth Appellate District.—November 10, 1930.]

JAMES G. EARLY, Appellant, v. L. D. OWENS, Jr., et al., Respondents.

Otto A. Gerth for Appellant.

Howard F. Shepherd for Respondents.

MARKS, Acting P. J.—L. D. Owens, Jr., was a real estate broker, duly licensed under the laws of California, doing business under the name of L. D. Owens Company. W. J. Caverley was a salesman working out of the office of this company.

The complaint in this action alleges: That on or about October 27, 1926, appellant was the owner of ten acres of land near Rialto in the county of San Bernardino of the reasonable value of $20,000; that he was also the owner of a promissory note in the principal sum of $15,000 secured by a deed of trust upon real property in the county of Los Angeles; that he was also the owner of an improved lot located on Melrose Avenue in the city of Los Angeles of the reasonable value of $20,000; and that at said time Fannie Jacobs was the owner of four improved lots on Santa Monica Boulevard in the city of Los Angeles of the reasonable value of $70,000. The complaint further alleged that on the twenty-seventh day of October, 1926, respondents were employed by appellant as his agents and brokers to sell and trade his property together with the sum of $1250 for the Fannie Jacobs property at the agreed price of $88,000; that the exchange was fully consummated and the conveyances made and delivered concluding the transfers; that appellant paid respondents the sum of $1965 for their services in consummating the exchange; and, further, that at the time of, and before the exchange, respondents had received a listing of the Fannie Jacobs property for a sum approximating $70,000, at which price she was then willing to sell; that this fact was concealed by respondents from appellant; that in consummating the exchange, respondents, without the knowledge of appellant, kept for themselves the ten-acre orange and lemon grove near Rialto and ever since such time have held the legal title thereto without the authority or consent of appellant. The complaint further alleged that upon discovering these facts appellant demanded that respondents return to him the Rialto property and the sum of $1965 paid as commission. This demand was refused. This action was brought to obtain a judgment decreeing that the title to the Rialto property was held by

respondents in trust for appellant, and that respondents be ordered to convey said property to him; or that appellant be given judgment against respondent in the sum of $21,965.

The answer of respondents denied all of the allegations of the complaint upon which fraud on their part could be predicated. They alleged that the L. D. Owens Company was the agent for appellant and for Fannie Jacobs in making the exchange of properties, and that this agency was known to both principals, together with the fact that commissions were paid by both of them. The answer further alleged that the $15,000 promissory note was secured by a second deed of trust and was of the reasonable market value of not more than $12,500; that the Melrose Avenue property was subject to a mortgage of $5,000 and that the equity of appellant therein was of a value of not more than $9,500; that the Rialto property of appellant did not have a reasonable market value of more than $8,000; that the property of Fannie Jacobs was of the reasonable market value of $75,000, or more, and was subject to encumbrances in the total sum of $36,750, and that she had listed said property for sale with the L. D. Owens Company for the sum of $70,310 in cash. It was further alleged that the exchange value put by appellant upon his property was greatly in excess of its market value and that to meet this inflated value and to consummate the trade, Fannie Jacobs placed the value of her property at $88,000. It was further alleged that Fannie Jacobs was willing to accept appellant's Melrose Avenue property in the exchange, but was unwilling to accept either the promissory note or the Rialto orange and lemon grove and that these had to be sold and reduced to cash to consummate the transaction; and, that with the full knowledge and consent of appellant, the promissory note was purchased by L. D. Owens, Jr., for $13,800 and the Rialto property for $7,500, which sums were paid by him to Fannie Jacobs and the trade thus consummated; that appellant indorsed the promissory note and deeded the Rialto property to Fannie Jacobs, who in turn conveyed these properties to L. D. Owens, Jr.

The trial court found the allegations of the answer true and that respondents had informed appellant that the price of $88,000 fixed upon the Fannie Jacobs property was a trade value only and that it could be purchased for very

much less than this amount. It further found that the sale of the promissory note and the Rialto property by Fannie Jacobs to L. D. Owens, Jr., was made with the knowledge and consent of appellant. It further found that the net value of the property traded and money paid by appellant for the Jacobs property totaled the sum of $33,550 and that the net value of the Fannie Jacobs property received by appellant was the sum of $38,250. It further found that there was no fraud or deceit practiced upon appellant by respondents or either of them and that appellant had not been damaged in any sum, but had received in the exchange property of more value than the worth of the money and property paid and conveyed by him to Fannie Jacobs. Upon these findings the court entered judgment in favor of respondents.

Appellant's chief contention upon which he relies for a reversal of the judgment is that the evidence fails to support the findings of the trial court to the effect that the purchase of the Rialto property by L. D. Owens, Jr., was with the knowledge and consent of appellant. He relies upon the well-established rule of law that an agent is required to disclose to his principal all information within his knowledge concerning a transaction being consummated for such principal and that an agent cannot make a secret profit when acting for the principal. He relies upon the fact that the valuations of the respective parcels of his property were set forth in the exchange agreements and maintains that these valuations were binding upon all of the parties. He also contends that respondents should have obtained for him the Fannie Jacobs property at a price of $70,310 instead of $88,000.

We have examined the record at length and have reached the conclusion that the findings of the trial court are amply supported by the evidence. Both respondents told appellant that the valuation of $88,000 placed upon the Fannie Jacobs property was for trading purposes only and that it could be purchased for much less than that sum. They told appellant that Fannie Jacobs needed money very badly and could not accept all of his property in trade and that the orange and lemon grove and promissory note would have to be liquidated and reduced to cash before the transaction could be consummated. It is well established that respondents

tried to get appellant to take the orange grove for $7,500 and pay this amount into the escrow so that the transaction could be closed. In fact, L. D. Owens, Jr., testified that appellant knew that he had taken title to the orange and lemon grove and had told him where he could sell the orange crop. There is ample evidence in the record to support the court's finding that this information was conveyed to appellant during the negotiations between the parties and before the transaction was completed.

Appellant admitted that respondents tried to get him to repurchase the orange grove for $7,500, but maintained that this offer was made after the exchange was completed. Appellant's testimony in this respect was thoroughly impeached by his testimony in a deposition given before the trial. In this deposition he testified that he knew that the prices fixed on his properties were fixed above their actual values and upon an exchange basis, and that he knew that the Fannie Jacobs property could be purchased for a sum much less than the $88,000 named in the agreement of exchange. In this deposition he testified that L. D. Owens, Jr., told him that Fannie Jacobs would not take the Rialto property on the exchange and that it would have to be disposed of before the exchange was completed so that Fannie Jacobs could receive money therefor.

█ It further appears from the undisputed evidence in the record that the contracts of exchange were placed in escrow with the Guaranty Building and Loan Association of Hollywood, California. In this escrow and as a part thereof are instructions to the escrow-holder signed by Fannie Jacobs and her husband in which it appears that the Rialto grove was to be sold to Owens for the sum of $7,500 and the promissory note and deed of trust for the sum of $12,750, she receiving for her property, through escrow, the Melrose Avenue property of appellant and cash in the sum of $20,800. An assignment of the note and deed of trust from Fannie Jacobs and her husband to L. D. Owens, Jr., was placed in this escrow, as was a deed to the Rialto property conveying it from Fannie Jacobs and her husband to L. D. Owens, Jr. A further instruction was deposited by L. D. Owens, Jr., in this same escrow instructing the escrow-holder to deliver the promissory note and deed of trust to the Los Angeles Home Builders upon its payment

of $13,800 into the escrow. This same instrument recited that this sum, together with the money paid into escrow by Owens for the Rialto property, be paid to Fannie Jacobs. It clearly appears from the escrow instructions of Fannie Jacobs that the promissory note and deed of trust and the Rialto grove were being sold by her to L. D. Owens, Jr., at a price fixed by her. Before the close of the escrow Owens succeeded in selling the note and deed of trust to the Los Angeles Home Builders. Had appellant examined the various instruments and instructions deposited in escrow he would have been informed of the entire transaction and would have known every detail of it about which he now complains.

It is well-settled law in California that the holder of an escrow is agent for all parties up to the time that the escrow is closed. (*Shreeves* v. *Pearson,* 194 Cal. 699 [230 Pac. 448]; *McDonald* v. *Huff,* 77 Cal. 279 [19 Pac. 499]; *Bartley* v. *Fraser,* 16 Cal. App. 560 [119 Pac. 683]; *First Nat. Bank* v. *Caldwell,* 84 Cal. App. 438 [258 Pac. 411]; *Law* v. *Title Guarantee & Trust Co.,* 91 Cal. App. 621 [267 Pac. 565].) In this case the escrow was not closed until after all of the documents we have referred to were placed therein.

It is also well-settled law in this state that notice given to or possessed by an agent within the scope of his employment and in connection with and during his agency, is notice to the principal. (Sec. 2332, Civ. Code; *Bogart* v. *George K. Porter Co.,* 193 Cal. 197 [31 A. L. R. 1045, 223 Pac. 959]; *Waldeck* v. *Hedden,* 89 Cal. App. 485 [265 Pac. 340].) In the case of *Shamlian* v. *Wells,* 197 Cal. 716 [265 Pac. 340], it was held as follows: "The general rule is well settled that the knowledge of the agent in the course of his agency is the knowledge of the principal. (1 Cal. Jur. 846, and cases cited.) It rests on the assumption that the agent will communicate to his principal all information acquired in the course of his agency, and when the knowledge of the agent is ascertained the constructive notice to the principal is conclusive. (1 Cal. Jur. 853, and cases cited.)"

In the case of *Watson* v. *Sutro,* 86 Cal. 500 [24 Pac. 176, 25 Pac. 64], it was held as follows: "Knowledge by notice to attorney or counsel or agent acquired during the negotiations for a purchase is constructive notice to their principal.

If it were otherwise, it would cause great inconvenience, and notice would be avoided in every case by employing agents. (See cases cited in 2 Lead. Cas. Eq., pt. 1, pp. 133, 134.) That notice to an agent is notice to the principal has been held in this state ever since *Connelly* v. *Peck,* decided in 1856, and reported in 6 Cal. 348; followed in *May* v. *Morrell,* 12 Cal. 91; *Stanley* v. *Green,* 12 Cal. 148; *Hunter* v. *Watson,* 12 Cal. 363 [73 Am. Dec. 543]. (See other cases referred to in Gear's California Index-Digest, 97.) Notice to counsel or attorney is constructive notice to client. (*Bierce* v. *Red Bluff Co.,* 31 Cal. 161, decided in 1866, and *Donald* v. *Beals,* 57 Cal. 399.) All these cases in regard to an agent apply to an attorney or counsel; for they are a species of agent. Justice Bradley, in *The Distilled Spirits Case,* 11 Wall. 367 [20 L. Ed. 167], states the principle on which the rule rests: 'The general rule,' says the learned judge, 'that a principal is bound by the knowledge of his agent is based upon the principle of law that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject-matter of the negotiations, and the presumption will be that he will perform that duty. It will be of no avail to the purchaser that the agent omitted to communicate what he ascertained to his principal. (*Williamson* v. *Brown,* 15 N. Y. 359.) In other words, one who acts through another will be presumed to know all that the agent learns during the transaction, whether it is actually communicated to him or not. There is no difference in this respect between actual and constructive notice; for if there were, an agent would be employed whenever it was convenient to remain in ignorance.' (*Bank of United States* v. *Davis,* 2 Hill (N. Y.), 451–461.) Or as the reason of the rule was stated by Lord Brougham: 'Policy and the safety of the public forbid a man to deny knowledge while he is so dealing, as to keep himself ignorant, or so that he may keep himself ignorant, and yet all the while let his agent know, and himself profit by that knowledge.' (*Kennedy* v. *Green,* 3 Mylne & K. 699–719.) It is plain that the ordinary dealings of men could not be carried on without imperiling the rights of property to a degree which could hardly be conceived, and infinite wrong done to innocent persons, unless the rules pointed out were established canons of law.''

We must therefore conclude that appellant had actual notice from respondents that L. D. Owens, Jr., was purchasing the Rialto property from Fannie Jacobs and that he also had constructive notice through his agent, the escrow-holder, of every detail of the transaction before the exchange was consummated. Appellant cannot now be heard to complain because his agent, Owen, purchased a portion of the property from Fannie Jacobs, the party to whom appellant conveyed it, as this was all disclosed in the escrow instructions. Respondents received no secret profit. Furthermore, Owens paid his own money to Fannie Jacobs for the Rialto property, the benefits from which payment are still retained by appellant, and nowhere does it appear that he ever made any offer to restore to Owens the money paid out by him.

It further appears that appellant gave to Fannie Jacobs just the property he intended to give her and received from her in exchange the identical property which he expected to obtain. The value of the property given, and the value of the property received, had been raised above their actual market values to fictitious trade values by both parties to the transaction. Appellant received a greater value in the Jacobs property than he gave to Fannie Jacobs in his property. He has shown no damage resulting from this transaction and under the circumstances of this case he cannot complain. (*Rouse* v. *Morgan,* 108 Cal. App. 314 [291 Pac. 441].)

As we have concluded from the record before us, that the findings of the trial court are amply supported by the evidence, that there was no fraud practiced upon appellant in the transaction, that no secret profit was made by respondents, that appellant was in no way damaged by anything said or done by any of the other parties to the transfers, we cannot disturb the judgment.

Judgment affirmed.

Barnard, J., and Warmer, J., *pro tem.,* concurred.