**In re CHRISMAN et ux.**

**No. 5366.**

District Court, S. D. California, N. D.

Oct. 18, 1940.

James T. Barstow, of Fresno, Cal., for debtors.

James W. Campbell, of Fresno, Cal., for objectors.

YANKWICH, District Judge.

On March 4, 1938, H. C. Offutt and Asalee Offutt, whom we shall call *the objectors,* were the owners of certain farm land in Fresno County, California. On that day, they executed with James Gilbert Chrisman and Elma N. Chrisman, his wife, *the debtors,* an agreement for the sale of the property for the sum of $3,250, payable at the rate of $200 or more a year, beginning on the 4th day of March, 1940, and annually thereafter, and continuing until the 4th day of March, 1942, at which date the total unpaid balance of principal and interest was to be paid. The agreement contained this clause: "It is understood and agreed by and between the parties hereto that this Contract of Sale is to remain in Escrow with the Home Title Company, until the $200.00 principal payment, together with interest payable March 4, 1940, is made."

Pursuant to this clause, two copies of the agreement were deposited in escrow, under instructions which conditioned delivery of one of the copies to the debtors upon payment of the sum of $200 on March 4, 1940.

The debtors were allowed to occupy the land and farm it, paying all state and county taxes and all irrigation district assessments levied or assessed against it after March 4, 1938. They never made the payment due on March 4, 1940. And one or two days after that date, the escrow holder redelivered both copies of the agreement to the objectors.

On February 19, 1940, the debtors filed their petition under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. They listed the property as theirs and listed the objectors as creditors in the amount of $3,720.93, the total purchase price and accrued interest. At the first meeting of the creditors, the objectors resisted the inclusion of the land in the estate of the debtors upon the ground that they had "no right, title, interest or estate of any kind or nature whatsoever in it".

After a full hearing of the matter, the Conciliation Commissioner, on May 24, 1940, overruled the objection and ordered that the property be made subject to administration.

Before me is a petition to review this portion of the Order.

Section 75 deals only with property which the debtor owns or in which he has some interest. In re Tracy, 7 Cir., 1935, 80 F.2d 9; United States National Bank of Omaha v. Pamp, 8 Cir., 1936, 83 F.2d 493. The Court is without power to subject to administration the property of another, in which the farmer debtor *does not have or cannot legally claim* an interest. The Conciliation Commissioner evidently took the view that the agreement granting possession to the debtors constituted a property right subject to administration. The word "property" in Section 75 should receive a broad construction. In re Cope, D.C.Colo.1935, 8 F.Supp. 961; Hoyd v. Citizens Bank of Albany Co., 6 Cir., 1937, 89 F. 2d 105. But whatever right the debtors had must be determined by the agreement between them and the objectors, construed according to the law of California.

In California, as elsewhere, delivery of an instrument in escrow conveys no title. California Civil Code, Sec. 1057; Craig v. White, 1921, 187 Cal. 489, 202 P. 648; North Confidence Mining & Development Co. v. Morrice, 1922, 56 Cal.App. 145, 204 P. 851; Deming v. Smith, 1937, 19 Cal.App.2d 683, 66 P.2d 454.

Occupancy of land, while awaiting delivery of instruments in escrow, does not give rise to any interest in it *independent of the conditions of the escrow or contrary to it.* Occupancy,—terminable at a given date, on failure on the part of the occupant to comply,—is aimed to aid the fulfillment of the conditions of the escrow. It cannot be used to create a relationship when the escrow is abandoned and the instruments are returned to the person who deposited them. In Wolcott v. Johns, 1896, 7 Colo.App. 360, 44 P. 675, the instruments involved were deeds conveying property and promissory notes given as the purchase price. However, what the Court said about the effect of the delivery into escrow of the instruments and of the interim possession until the escrow was concluded, applies, with like force, to possession incidental to the escrow of a contract of conditional sale.

284

We quote:

*"Until performance the instruments were entirely ineffective for any purpose. There was no conveyance, and there was no obligation upon the notes. The estate, with all its incidents, remained in Johns. If he had died in the meantime, it would have descended to his heirs.* It was subject to attachment for his debts, and a creditor levying upon it would hold it in preference to the grantees named in the deed. Warv.Vend. 515; Washb. Real Estate, 302; Prutsman v. Baker, 30 Wis. 644 [11 Am.Rep. 592]; Smith v. [South Royalton] Bank, 32 Vt. 341 [76 Am.Dec. 179]; Jackson v. Rowland, 6 Wend. [N. Y.] [666] 667 [22 Am.Dec. 557]; Teneick v. Flagg, 29 N.J.L. [25] 26; Cagger v. Lansing, 43 N.Y. 550; Jackson v. Catlin, 2 Johns. [N.Y.] 248 [3 Am.Dec. 415]. By the depositing of the papers with Butler, Wolcott and Henderson acquired *no interest, legal or equitable, in the property;* and Johns, *no right in the notes.* Not until Butler was authorized by the conditions of escrow to deliver the deed to Wolcott and Henderson, and the notes to Johns, *could any right be vested in any of the parties.* * * *

*"We do not think that the situation was in any way altered by the fact that Wolcott and Henderson went into possession of the property, and did work upon it.* It would not bind them to accept an imperfect title, or change the terms upon which the deed or notes were to be delivered, and it did not relieve Johns from the performance of any condition upon which his right to the notes depended. *It gave them no ownership in the property,* and, as the *possession was taken by the permission of Johns, it could not be made the foundation of any new claim in his favor.* Upon the performance by him of the conditions of his contract, *there would be an absolute sale of the property, and Wolcott and Henderson would be its owners; but, until condition performed, there was no sale, and Wolcott and Henderson had no title or interest in the property, whether they went into possession or not."* Wolcott v. Johns, 1896, 7 Colo.App. 360, 44 P. 675, 681. (Italics added.)

In re Eisele, 7 Cir., 1936, 82 F.2d 309, holds that even an existing conditional contract for the sale of property, after condition is broken, does not create a debtor and creditor relationship or an interest in property under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. See In re Jones, D.C.Mo.1938, 23 F.Supp. 10.

Here, there was no actual contract of sale, as the deposited agreement was never delivered. While it was in escrow, the debtors had a mere right of possession, terminable, automatically, upon their failure to pay the installment of $200 due on March 4, 1940. And this was not only the legal effect of the undertakings of the parties as disclosed by the record. It was also their actual understanding. This appears clearly from the testimony of Louis F. Ryan, the manager of the title company, who handled the escrow. We quote from the record:

"Q. And would you tell the Court what took place; what was said and done with reference to this escrow? A. Mr. Chrisman and Mrs. Chrisman came in with Offutt, and Offutt entered into an agreement upon the doing of certain things I was instructed to release one of these contracts to Chrisman, and one to Offutt, if and when Chrisman paid him $200 in March, 1940. These things, these agreements were to remain in escrow until the $200 was paid; *at that time there was to be a contract for the sale of the real estate.*

"Q. What was said, if anything, about Chrisman having any interest in this property until the contract was delivered? A. *He was to have no interest in the property until it was delivered. He was to go out and farm it and pay taxes and—irrigation taxes and so forth and to use it for farming purposes.*

"Q. And was that statement about him having no interest in that property,—was that made a part of the escrow? A. *There was not interest to pass until this payment was made, but that he could use it, and that he would pay taxes, and irrigation taxes, and he wanted to go out and farm it, and Offutt gave him permission to farm it or plant any kind of crops he wanted on the place.* As I understand it, he had cows and he was taking his cows out there.

"Q. Did Mr. Chrisman ever perform the terms of it to your knowledge? A. *Never deposited anything in the Home Title Company.*

"Q. Did you ever deliver a copy of the contract to Mr. Chrisman? A. *No. Delivered both copies of the contract to you.*

"Q. At what time? Prior or subsequent to the date of performance? A. *I would say March, either a day or two days after March 4, of this year."* (Italics added.)

█ Under the law of California, the witness, as escrow holder, was the agent of both parties. Early v. Owens, 1930, 109 Cal.App. 489, 293 P. 136. His testimony is, therefore, that of one whose duty of fidelity extends to all parties to the transaction, and who does not speak as a partisan of either side to the controversy.

█ So, when the escrow was terminated by the redelivery of the deposited instruments to the objectors, the right of occupancy terminated automatically.

By holding over the debtors were guilty of unlawful detainer. California Civil Code of Procedure, Sec. 1161, Subdiv. 1. Unlawful detention could not ripen into a "property" right, even under the most liberal interpretation of that term.

Had the debtors made the initial payment and received delivery of the contract of sale, the bankruptcy court would have acquired jurisdiction over their interest in the land. The objectors would have become mere creditors,—at least before default. Walker v. Houston, 1932, 215 Cal. 742, 12 P.2d 952, 87 A.L.R. 937; In re Lake's Laundry, Inc., 2 Cir. 1935, 79 F.2d 326, 102 A.L.R. 247; In re Burgemeister Brewing Co., 7 Cir., 1936, 84 F.2d 388.

█ Section 75, sub. *o*, distinctly recognizes "contracts for purchase" and "conditional sales contracts", as rights subject to administration in proceedings under Section 75 of the Act. But this contemplates contracts of this character *actually in force.*

At the time these proceedings were instituted, *barely fourteen days before payment was due,* the contract for the conditional sale of the land was still in escrow. It could not and did not confer any rights to the land on the debtors until a copy was delivered to them by the escrow holder. Delivery was conditioned upon the payment of $200 on March 4, 1940. The payment not having been made, the escrow was terminated by the redelivery of the instruments to the objectors. No rights in the land could come into being until the condition precedent,—payment of the stated sum,—was complied with and delivery made. No such payment was made. And the debtors, *by their own act,* ended the possibility of acquiring an interest in the property.

One can readily see the injustice which would arise if,—despite this,—the land were subjected to the administration of the bankruptcy court. What is there to administer? The mere right of occupancy? That terminated when the escrow came to an end.

The objectors, by abandoning the escrow, as they had a right to do, *have no enforceable contract of sale with the debtors.* Whatever rights they had ceased with the failure to comply. The debtors, by listing the objectors as creditors, cannot force them to sell under an agreement which never took effect. The objectors were under no obligation to sell, except under the terms of the escrowed agreement. The escrow and the undelivered contract of conditional sale were the measure of the rights of the objectors and the debtors against each other. These, having expired by the passage of the time limit, what criterion could a court of bankruptcy use in determining the relationship of the parties?

Section 75 contemplates the composition and extension of debts. What is there to compose or extend, so far as the objectors are concerned? There is no debt owing to them, which they can enforce in any court of law. And a bankruptcy court cannot create a debt when none exists. Nor can it determine the rights of a creditor who is not such.

In the various subdivisions of Section 75, "creditors" are spoken of repeatedly. Rightly. For the object of the section is to allow the farmer to secure a composition or extension of debts which he owes to others. If he does not owe anything, he has nothing to compose or as to which he needs an extension.

█ Differently put, unless the relation of debtor and creditor exists, the section is not brought into play. In re Cole, D.C.Mich.1939, 29 F.Supp. 382. Any other interpretation would do violence to the letter and spirit of this legislation, would result in grave injustice and bring this beneficent enactment into disrepute. This may be made more evident if we consider possible future proceedings.

Assume that no composition or extension is effected. The debtors might then amend their petition and ask to be adjudi-

cated bankrupts under Section 75, sub. s. After the proceedings contemplated by that section, the Conciliation Commissioner could determine the rental value of the land. And the debtors could be given the right to occupy it for a period of three years, —*land which the objectors own and as to which they have no enforceable agreement of sale with the debtors.* Such order would tie the hands of the objectors for that period of time, during which they could not sell or make an agreement to sell the land.

I do not believe that this section was intended to effect injustices of this character.

On the contrary, I am of the view that an extension of the terms of the Act, so as to permit inclusion of property of persons who are not creditors, and as to which the debtor cannot assert any legal right, would do violence to the concept of due process.

The portion of the Order of the Conciliation Commissioner, dated May 24, 1940, including the property of H. C. Offutt and Asalee Offutt among the assets of the debtors and subjecting it to administration, is reversed. The property is hereby ordered eliminated from these proceedings.

Formal order to follow.