FLOYD R. CLODFELTER AND ENNA L. CLODFELTER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1207–65. Filed August 14, 1967.

*Warren V. Clodfelter, Roger E. Lageschulte,* and *Richard F. Krutch,* for the petitioners.

*Richard H. M. Hickok,* for the respondent.

PIERCE, *Judge:* The Commissioner determined a deficiency of $219,590.50 in the income tax of the above-named petitioners for their taxable calendar year 1957.

The issues for decision are:

(1) Where during the taxable year the petitioners, acting in accordance with a previously negotiated plan, purchased the lessee interest in the 99-year leasehold of the Waldorf Hotel in Seattle, and then forthwith sold said leasehold interest together with certain hotel furniture to a corporation under a contract of conditional sale, for the total price of $700,000—did such transfer of the hotel leasehold and furniture to the corporation constitute a "sale or other disposition of property," within the meaning of section 1001 of the Internal Revenue Code of 1954, as to which gain or loss to the petitioners should be determined for income tax purposes?

(2) If the above issue is decided in the affirmative, (a) what was the amount of gain to the petitioners, if any, from said transaction; (b) did the same constitute long-term or short-term capital gain; and (c) were petitioners entitled to report such gain for income tax purposes, in accordance with the installment method provided in section 453 of the 1954 Code?

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulations of fact and all exhibits identified therein are incorporated herein by reference.

The petitioners, Floyd R. Clodfelter and Enna L. Clodfelter, are husband and wife who, at the time of filing the petition herein, had their legal residence in Seattle, Wash. For the taxable year involved, they filed a joint income tax return with the district director of internal revenue at Tacoma, Wash.

On July 1, 1951, the petitioners acquired by purchase from Maltby-Thurston Hotels, Inc., a Washington corporation, the lessee interest under a 99-year leasehold covering the land, buildings, and improvements of the Waldorf Hotel in Seattle, Wash.; and in the same transaction they also purchased certain hotel furniture, furnishings, and equipment (all of which are hereinafter called furniture). The purchase was effected through use of an instrument entitled "Contract of Conditional Sale of Leasehold Estate and Personal Property," under the terms of which: The total purchase price was agreed to be $436,250, of which $40,000 was paid down and the balance was to be paid in deferred installments; the petitioners as "vendees" were given immediate possession, use and control of the properties involved; and the "vendor" corporation was given the right to retain title to said properties until all the deferred installments had been paid. The petitioners thereupon allocated $411,250 of said purchase price to their cost basis for the leasehold interest, and $25,000 to

their cost basis for the furniture; took possession of the properties; and proceeded to operate the hotel.

Four years later on July 1, 1955, while part of the deferred installments owing to Maltby-Thurston under the above-mentioned purchase were still unpaid, petitioners sold their entire interest in the Waldorf leasehold (but not including any hotel furniture) to Milton and Emelia Bave for the price of $310,000; and then simultaneously, they subleased back the hotel premises from the Baves for a limited period of 15 years. Said sale of the leasehold to the Baves, like the previous sale from Maltby-Thurston Hotels, Inc., to the petitioners, was effected through use of a conditional sale contract. The petitioners, in their 1955 income tax return, reported and treated their said transfer of the leasehold to the Baves as being a closed-sale transaction. They thereafter paid rentals to the Baves in accordance with the 15-year sublease, and deducted these rentals in computing their taxable income. And on April 3, 1962, petitioner Floyd R. Clodfelter submitted an affidavit to the Internal Revenue Service in which he represented under oath that, from July 1, 1955, until January 1, 1957, he had no beneficial interest in the leasehold for the Waldorf Hotel, other than as a tenant of the Baves under the above-mentioned 15-year sublease.

During the latter part of 1956, negotiations were had between (a) a Washington corporation named the Doric Co., (b) the previously mentioned Maltby-Thurston Hotels, Inc., and (c) the petitioners herein—relative to the possibility of the Doric Co.'s acquiring the Waldorf Hotel properties, and relative also to the manner in which such acquisition might be effected and financed. The Doric Co. had been organized in 1954 to acquire and operate hotels, apartments, and other real properties; and petitioner Floyd R. Clodfelter had at all times since said company's incorporation been the president, the chairman of the board of directors, and a substantial stockholder. By 1956 the corporation had already acquired interests in at least two other Seattle hotels.

Thereafter during the first 6 months of 1957, the following transactions which had been agreed upon during the above-mentioned 1956 negotiations, were consummated and made effective as of January 1, 1957:

(A) The petitioners first reacquired from Milton and Emelia Bave the same lessee interest in the Waldorf Hotel leasehold which they previously had sold to the Baves in the above-mentioned transaction of July 1, 1955. This reacquisition was effected by a quitclaim deed executed by the Baves under date of January 1, 1957; and the petitioners, in consideration for retransfer of such leasehold interest, delivered to the Baves $60,000 in cash and securities, and also can-

celed the unpaid balance of $232,750 which the Baves owed under their 1955 purchase contract with petitioners.

(B) Simultaneously with the petitioners' reacquisition of the Waldorf leasehold from the Baves, petitioners sold said leasehold together with certain hotel furniture to the Doric Co. for the total price of $700,000. This sale to Doric was effected by an instrument entitled "Contract of Conditional Sale of Leasehold Estate and Personal Property" which was similar in form and substance to the instrument under which the petitioners had first acquired an interest in the Waldorf Hotel from Maltby-Thurston on July 1, 1951. The instrument stated that it was "made and entered into at Seattle, Wash., as of the 1st day of January 1957." Thereafter it was filed of public record.

(C) Simultaneously with the Doric Co.'s above-mentioned purchase from petitioners of the leasehold and furniture of the Waldorf Hotel, Doric sold a one-half interest in the same to William M. Sander and Donald L. Sander for the price of $350,000—employing again an instrument entitled "Contract of Conditional Sale of Leasehold Estate and Personal Property." And immediately thereafter, the Doric Co. and the two Sanders formed a partnership for the operation of the Waldorf Hotel, which partnership was known as the Waldorf Hotel Partnership. These transactions likewise were made effective as of January 1, 1957, in accordance with the previously negotiated plan.

Under the terms of the instrument whereby the petitioners sold the hotel leasehold and furniture to the Doric Co. as of January 1, 1957, petitioners allowed the following credits to Doric against the agreed $700,000 sale price of the properties:

Credit of $60,000 { representing *cash received* by petitioners as the downpayment.

Credit of $150,000 { representing an additional cash payment which, pursuant to the presale negotiations, was to be paid to petitioners out of certain post-sale refinancing; and which petitioners *actually received* on or about Feb. 6, 1957.

Said post-sale refinancing consisted of a new $900,000 blanket first mortgage obtained from an insurance company subsequent to the sale to Doric here involved; and which mortgage became a post-sale lien upon two hotels (including the Waldorf) in which Doric and Maltby-Thurston held the principal interests. The $150,000 was advanced to petitioners out of the proceeds of said post-sale mortgage, through a check issued by Maltby-Thurston which was handling the mortgage proceeds; and then, after Doric was allowed the above-mentioned credit, it made all reimbursements to Maltby-Thurston—without petitioners paying any portion thereof.

698

Credit of $356,105.68 
{ representing principal and accrued interest as of Jan. 1, 1957, in respect of a lien held by Maltby-Thurston against the Waldorf leasehold and furniture which petitioners were selling to the Doric Co. This lien had been created in connection with petitioners' initial purchase of these properties on July 1, 1951.

After Doric received credit for the above-mentioned amount against the purchase price of said properties, it made all subsequent payments in respect of said lien until the obligation was fully discharged in 1962; and petitioners made no post-sale payments in respect to the same. }

After allowance of all the above credits which total $566,105.68, the remaining balance of the $700,000 purchase price for the Waldorf properties, was $133,894.32. The Doric Co., as purchaser of the properties, thereupon agreed in the purchase contract that this remaining balance would be paid in monthly installments—each in an amount equal to the "net operating profit" derived from the operation of the Waldorf Hotel during the preceding month—with the right reserved, however, to accelerate such payments; and with interest to accrue on any unpaid principal balances of the purchase price, at the rate of 5 percent per annum. The term "net operating profit" was defined in the sale contract to be, in substance, *all the cash flow* from the purchaser's operation of the Waldorf Hotel, without any deduction for depreciation or management fees, but after: (a) Provision for establishment of a $5,000 reserve fund; and (b) provision for payments to Maltby-Thurston in respect of the items for which the second and third above-mentioned credits were allowed to the Doric Co. As security for said periodic payments, petitioners as sellers of the Waldorf properties were given a right to foreclose and recover the properties in the event of any default by the purchaser.

The adjusted bases to petitioners on January 1, 1957, for the hotel leasehold and furniture which they sold to the Doric Co. as of said date, were as stipulated:

| | |
|---|---:|
| Basis for leasehold interest_____ | $292, 750. 00 |
| Basis of portion of furniture acquired from Maltby-Thurston on July 1, 1951_____ | 6, 064. 18 |
| Basis of other furniture acquired after July 1, 1951___ | 102, 044. 51 |
| Total_____ | 400, 858. 69 |

The Doric Co. as purchaser of said leasehold and furniture, took possession and control of these properties as of the agreed effective date of January 1, 1957; and simultaneously therewith the newly created Waldorf partnership, composed of the Doric Co. and the two Sanders, commenced operation of the hotel. Thereafter these parties, in their 1957 Partnership Return of Income, deducted depreciation

on said Waldorf properties, in accordance with representations in their depreciation schedule that they had acquired said properties on January 1, 1957.

The petitioners, in their joint income tax return for the year 1957 which was prepared in accordance with the cash receipts and disbursements method, reported a long-term capital gain of $219,141.31 from sale on January 1, 1957, of their interest in the Waldorf Hotel. They stated that such interest had been acquired by them on July 1, 1954; that it had a basis at the time of the sale, of $1,355.22; and that it had been sold by them for the price of $220,496.53. Petitioners, then declared their election to report said gain on the installment method; and stated that no portion of the sale price had been received in 1957. None of the above-mentioned amounts reported by petitioners as being the *gain* from the sale, the *basis* of the properties, and the *sale price* thereof, is reconcilable with the evidence in this case. Neither in 1957 nor in any subsequent year did petitioners report any taxable income from the sale.

Thereafter the Commissioner, in his statutory notice of deficiency herein, determined: That the petitioners had realized in the taxable year involved, a gain of $305,205, from sale of their interests in the Waldorf Hotel properties; that this gain constituted short-term capital gain; and that petitioners were not entitled to report such gain on the installment method, because they had received more than 30 percent of the selling price in the year of the sale.

OPINION

*I*

The first issue to de decided is, as previously indicated: Whether the transaction whereby petitioners sold to the Doric Co., under a conditional sale contract and as of January 1, 1957, the leasehold and furniture of the Waldorf Hotel for the price of $700,000, constituted a "sale or other disposition of property" within the meaning of section 1001 of the Internal Revenue Code of 1954,[1] as to which gain or loss for income tax purposes must be determined.

It is our opinion, after considering and weighing all the evidence in the light of the statutory provisions, the Income Tax Regulations, and the judicial authorities which we regard to be pertinent, that this question must be answered in the affirmative. In arriving at this conclusion, we have given principal consideration to the following:

1. The Internal Revenue Code provides specifically, in appropriately designated subchapters and sections: (a) How gain or loss from

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

"sale or other disposition of property" shall be determined for income tax purposes; and (b) under what circumstances, all or part of any gain so determined may be reported as income for a year or years other than the year of the sale. See secs. 1001, 1002, and 453, I.R.C. 1954, and also sec. 1.453–4, Income Tax Regs.

These provisions of the statute and regulations make it clear that the term "sale or other disposition of property" is intended to comprehend, not merely outright sales of real or personal property wherein all the purchase price is received by the seller in the year of the sale, but also deferred-payment sales under which part or all of the sale price is to be paid in a subsequent year or years.

Also, these and related provisions make it clear that the amount of any *gain* from a sale (as well as the adjusted basis of the property and the length of the seller's holding period for the same) must be determined *as of the time of the sale*, irrespective of whether the seller is on the cash or the accrual basis; although the *year or years* in which the gain is to be *reported as income* may vary with the facts of particular cases. And as regards any *loss* from a sale, the amount thereof must likewise be determined as of the time of the sale, and is deductible only in the year the sale is consummated—regardless of when the consideration is paid, and also irrespective of whether the seller is on the cash basis or the accrual basis.

2. The seller's retention of title under a conditional sale contract until all deferred payments have been received, does not prevent the sale from being a closed transaction in respect of which gain or loss is to be determined under the above-mentioned statutory scheme. Such retention of title is merely for security purposes; and the security thus provided for the seller is comparable to that which he would have acquired if he had first transferred the title to the purchaser and had then simultaneously reacquired the same for security purposes, through a mortgage from the purchaser. These two methods of providing security for deferred payments are treated alike for income tax purposes, since they have identical objectives and effects. *J. W. McWilliams*, 15 B.T.A. 329, 342–343; and *United States* v. *Marshall*, 357 F. 2d, 294, 295 (C.A. 9, 1966). See also Bogert, "Commentaries on Conditional Sales," 2A Uniform Laws Ann., sec. 9, pp. 8–9.

3. Furthermore, we are convinced from our examination of all the evidence, including the terms of the sale contract and the testimony of petitioner Floyd R. Clodfelter, that the intention of the contracting parties was that petitioners' transfer to the Doric Co. of the Waldorf properties for the agreed consideration, would constitute a completed sale. All steps leading to the sale were negotiated and agreed upon

in the latter part of 1956, by the petitioners, the Doric Co., and Maltby-Thurston Hotels, Inc. The petitioners' subsequent reacquisition of the hotel leasehold from the Baves was effected for the specific purpose of immediately selling the same to the Doric Co. The contract of sale designated the Doric Co. as "the Purchaser," and the petitioners as "the Seller"; and the parties have stated in their stipulation of facts, that the properties were "sold." The sale was made effective as of January 1, 1957—thereby fixing the specific date for recognition of the rights and obligations of the respective parties, and also for the computing of basis, holding period, and depreciation. The sale price, too, was definitely fixed; specific credits against such price were allowed the purchaser; and the unpaid portion of the sale price was to bear interest at the rate of 5 percent per annum. Furthermore, the purchaser was given immediate possession; it thereupon assumed the rights and obligations of beneficial ownership; and thereafter such property interest and beneficial ownership would not be subject to termination or forfeiture, except on the happening of a condition subsequent—i.e., a default. See *Ted F. Merrill*, 40 T.C. 66, 74, affirmed per curiam 336 F. 2d 771 (C.A. 9, 1964).

We decide this first issue in favor of the respondent.

## II

The second issue pertains to (a) the *amount* of petitioners' gain from their sale of the Waldorf Hotel properties; (b) whether such gain was long-term or short-term capital gain; and (c) whether petitioners were entitled to *report* the gain for income tax purposes, under the installment method provided in section 453. We shall consider these matters in the above order.

1. *Determination of amount of petitioners' gain.*—Section 1001(a) of the Code provides in material part: "The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis"; and section 1001(b) then further provides in material part: "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." Also in this connection, the decision of the Supreme Court in *Crane* v. *Commissioner*, 331 U.S. 1, 12–13, which involved provisions of the Revenue Act of 1938 that are cognate to the above-quoted provisions of the 1954 Code, is authority for the proposition that the amount of any mortgage or other lien on property sold, *whether or not it is assumed by the purchaser*, is includable in the "*amount realized*" by the seller.

Applying the foregoing principles, we here find as a fact and hold that the "amount realized" by the petitioners from their sale of the Waldorf properties was $700,000, consisting of the following:

$60,000 — being the *cash received* by petitioners as the down-payment under the terms of the sale contract, as hereinbefore found.

150,000 — being the *additional cash received* by petitioners on or about Feb. 6, 1957.

As hereinbefore found, this payment was made to petitioners in accordance with the pre-sale arrangements; and petitioners allowed the Doric Co. a credit for said amount, against the agreed $700,000 purchase price.

The source of this payment was a portion of $900,000 new post-sale financing, which was secured by a mortgage on not only the Waldorf Hotel that Doric was purchasing, but also on another Seattle hotel in which Doric and Maltby-Thurston had financial interests. This mortgage was not a lien on the Waldorf properties at the time of petitioners' sale thereof to Doric.

356,105.68 — being the amount of the lien on the Waldorf properties, which Maltby-Thurston held at the time of petitioners' sale of said properties to the Doric Co. This lien, as hereinbefore found, was created in connection with petitioners' initial purchase of the properties in 1951; and the above amount consisted of $354,503.47 principal and $1,602.21 accrued interest as of Jan. 1, 1957.

Said total amount is includable in the "amount realized" by petitioners, under the doctrine of the *Crane* case.

133,894.32 — being the fair market value, in our opinion, of the deferred payments under the sale-contract, which petitioners were entitled to receive as a portion of the $700,000 consideration for their sale to Doric of the Waldorf leasehold and furniture.

As hereinbefore found, these deferred payments were a charge against the *entire net cash flow* from the purchaser's operation of the Waldorf Hotel—after provision for a $5,000 reserve, and for certain payments to Maltby-Thurston—but without reduction for depreciation or management fees or capital improvements. Any unpaid principal amount would bear interest at 5 percent per annum. And in case of default, petitioners would become entitled to foreclose and recover the leasehold and furniture.

The Commissioner valued said deferred payments at *face amount*, in his determination of the deficiency here involved. And the petitioners have failed to establish error in such determination.

Total: 700,000

We further find as a fact and hold, that the gain to petitioners from their sale of the Waldorf properties was $299,141.31, computed as follows:

| | | |
|---|---:|---:|
| Amount realized by petitioners, as above found | | $700,000.00 |
| Adjusted basis of properties, as stipulated and found: | | |
| Leasehold interest | $292,750.00 | |
| Furniture: | | |
| Originally purchased | 6,064.18 | |
| Additionally purchased | 102,044.51 | 400,858.69 |
| Amount of gain | | 299,141.31 |

2. *Classification of capital gain—long-term or short-term.*—The Commissioner determined in his notice of deficiency that none of petitioners' gain was attributable to the furniture included in the sale, and that all of such gain was attributable to the sale of the leasehold interest. In the absence of any evidence to the contrary, we approve said determination.

As we have hereinbefore found, the petitioners initially acquired an interest in the Waldorf leasehold in 1951, by purchase from Maltby-Thurston; they thereafter sold said leasehold interest to Milton and Emelia Bave in 1955; and it was not until 1957 that they reacquired an interest in said leasehold from the Baves, for the specific purpose of selling the same to the Doric Co. Such reacquisition of the leasehold interest from the Baves was effected in the taxable year, as of January 1, 1957; and the sale of the same to the Doric Co. was effected simultaneously, as of the same date.

Based on the foregoing, we here find as a fact and hold that the Waldorf leasehold which petitioners sold to the Doric Co., was held by them for less than 6 months prior to its sale; and hence, that petitioners' gain from the sale thereof constituted "short-term capital gain," as defined in section 1222(1) of the Code.

3. *Availability of installment method.*—Section 1001 of the Code recognizes, in subsection (d) thereof, that gain from the sale of property under a contract providing for deferred payments, *may* in some circumstances be taxable in the year or years when the payments are received, instead of being taxable only in the year of the sale. And section 453(b) of the Code, together with regulations pertaining thereto, set forth conditions and limitations which are prerequisite to use of the installment method. Such conditions and limitations, so far as here pertinent, are as follows:

(a) The taxpayer must have elected to use the installment method;

(b) There must either have been no payments received in the year of the sale, *or* the total payments for such year (exclusive of evidences of indebtedness of the purchaser) must not have exceeded 30 percent of the selling price; and

(c) If at the time of the sale, a lien by mortgage or otherwise was outstanding against any item of the property sold, then, whether or not the lien obligation was assumed by the purchaser, the amount of such obligation to the extent that it exceeded the basis of the property subject to the lien,[2] will be deemed a payment of the year of the sale in computing the 30-percent limitation. See sec. 1.453–4, Income Tax Regs.; *United States* v. *Marshall, supra* at 295.

Applying the above principles in the instant case, we here find as a fact and hold that, although the petitioners did elect in their 1957 income tax return to use the installment method, they were and are precluded from using such method because (as the Commissioner determined in his notice of deficiency) the payments which they received and are deemed to have received in the year of the sale, totaled more than 30 percent of the $700,000 selling price. Such "payments" (in nearest dollar amounts) were as follows:

| | | | |
|---|---|---|---:|
| Cash received as downpayment as before found | | | $60,000 |
| Additional cash received on or about Feb. 6, 1957, as before found | | | 150,000 |
| Excess of 1951 lien held by Maltby-Thurston, over basis of properties covered by said lien—computed as follows: | | | |
| Unpaid lien obligation at time of sale, as before found | | $356,106 | |
| Basis of property subject to lien: | | | |
| Leasehold | $292,750 | | |
| Original furniture | 6,064 | 298,814 | |
| Difference includable as payment received | | | 57,292 |
| Total payments for year of sale | | | 267,292 |

Based on the foregoing, we sustain the Commissioner's determination that petitioners were not entitled to report the gain here involved, under the installment method provided in section 453.

*Decision will be entered under Rule 50.*

---

[2] Under sec. 1.453–4, Income Tax Regs., we are dealing only with property subject to the lien.