T.C. Memo. 2003-225


UNITED STATES TAX COURT


ROBERT K. AND DAWN E. LOWRY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11579-00.                    Filed July 30, 2003.

Ps realized a sec. 1231, I.R.C., gain when a
partnership of which P husband was a 50-percent owner
conveyed rental property to the holder of a security
deed on the property in satisfaction of the loan
obligation.  Ps assert that the gain should be
recognized in 1993, because the lender issued a Form
1099-A indicating that the lender had acquired the
property on Dec. 15, 1993, the partnership executed a
grant deed, and the lender executed a covenant not to
sue, both dated Dec. 15, 1993.  In the same month, the
partnership and the lender issued escrow instructions
to a title company, under which the grant deed and
covenant not to sue were delivered in escrow pending a
subsequent closing of title.  Title closed in 1994.  Ps
did not disclose the gain on either their 1993 or 1994
Federal income tax returns.  <u>Held</u>:  Ps' sec. 1231,
I.R.C., gain must be recognized in 1994.  <u>Held</u>,
<u>further</u>, Ps are liable for the sec. 6662(a),

I.R.C., accuracy-related penalty on grounds of failure to prove that they acted with reasonable cause and good faith with respect to their substantial understatement of income tax for 1994 and 1995.

Daniel C. Ertel, for petitioners.

Lydia A. Branche, for respondent.

MEMORANDUM OPINION

NIMS, Judge:  Respondent determined the following deficiencies and penalties with respect to petitioners' Federal income taxes for the taxable years 1994 and 1995:

| Year | Deficiency | Penalties Sec. 6662(a) |
|------|-----------|------------------------|
| 1994 | $30,096 | $6,019 |
| 1995 | 179,066 | 35,813 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue.

After concessions by petitioners the issues remaining for decision are:

(1)  Whether a section 1231 gain in the amount of $774,982 was realized and should be recognized, alternatively, in 1993 or 1994; and

(2)  whether petitioners are liable for section 6662(a) penalties in 1994 and 1995.

The parties stipulated that respondent's adjustments resulted in passive activity losses in the amount of $614,164 and capital losses of $48,244 being fully absorbed in 1994, and therefore, those amounts that were carried forward to petitioners' 1995 tax return were adjusted and 1995 taxable income and penalty were increased by $674,789 and $48,244, respectively.

The parties also stipulated that the period of limitations for the assessment of a deficiency has expired for the 1993 taxable year pursuant to section 6501.

## Background

This case was submitted fully stipulated, and the facts are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. Petitioners resided in Santa Ana, California, when they filed their petition.

## The Fitch Property Transaction

At all relevant times petitioner Robert K. Lowry (petitioner) was a 50-percent partner in Lowry Wells Investments (the Partnership), which owned the Fitch Property, located in Irvine, California. The other 50-percent partner was George Wells.

The Fitch Property was encumbered by a Deed of Trust and Security Agreement (Deed of Trust) dated January 23, 1987, reflecting a loan made by Aid Association for Lutherans (AAL) to the Partnership in the amount of $3.5 million. The Deed of Trust secured a Promissory Note (Note) signed by both Partnership partners. The loan under the Deed of Trust was recourse in that it was personally guaranteed by George Wells and petitioner. As of June 29, 1993, the loan was in default, and AAL began the process of foreclosure of the Deed of Trust. On August 27, 1993, AAL notified the Partnership that "All of the legal and equitable interest in the rents, issues, and profits of the [Fitch] Property is vested in * * * [AAL]. * * * [AAL] is exercising its rights under the Deed of Trust."

At some point, AAL and the Partnership negotiated a settlement agreement (which is not in the record) in lieu of foreclosure whereby the Partnership would convey the Fitch Property to AAL in full settlement of the outstanding indebtedness.

On December 9, 1993, escrow instructions "on behalf of * * * [AAL] and * * * [the Partnership]" were issued to First American Title Insurance Company (the Title Company). The escrow instructions include the following provisions:

> Borrower has tendered to you in escrow the Grant Deed (the "Deed") from Borrower to Lender. Your acceptance of these escrow instructions constitutes your acknowledgment that (i) you have received and reviewed

an executed copy of the Settlement Agreement and the documents executed by the parties thereto pursuant to the terms thereof; (ii) all requirements precedent to issuance of the pro forma owner's title policy (the "Owner's Policy") attached hereto have been satisfied and that you are prepared to issue the Owner's Policy; (iii) you have confirmed that the Deed has been properly executed and witnessed; (iv) the Deed is in proper recordable form; and (v) the correct property description has been appended.

           *     *     *     *     *     *     *

                          CONSENTED TO:
                          LOWRY & WELLS INVESTMENTS,
                           a California partnership

                                  By:  George H. Wells
                                  Name:
                                  General Partner

On December 15, 1993, the partners executed a Grant Deed which would convey the Fitch Property to AAL.  The Grant Deed provided, among other things, that

> It is the intention of the Grantor and the Grantee that the lien created by the Deed of Trust will not merge into the fee title acquired by the Grantee pursuant to this Grant Deed.  No such merger will occur until such time as the Grantee executes a written instrument specifically effecting such merger and duly records the same.

Also on December 15, 1993, AAL executed a "Covenant Not to Sue" the Partnership and its general and limited partners as to any matter arising from the loans made by AAL to the Partnership and secured by the Deed of Trust.  The Covenant was conditioned upon a release by the Partnership to AAL, the conveyance of the Fitch Property to AAL, and "other good and valuable consideration."

Necessary steps continued until May 21, 1994, so that the Title Company could remove certain exceptions raised by the title report and provide title insurance as required by the escrow instructions. As of May 27, 1994, the Title Company had determined that it could issue the title policy without the exceptions, so the escrow closed and the Grant Deed was recorded on that date.

At some point, AAL issued to the Partnership a 1993 Form 1099-A (undated), Acquisition or Abandonment of Secured Property, indicating that the Partnership had an outstanding debt in the amount of $3,218,046.06 secured by the Fitch Property, that the date of acquisition or abandonment was December 15, 1993, and that the Fitch Property had an appraised value of $1,915,000.

On October 14, 1994, the Partnership filed an Amended Form 1065 U.S. Partnership Return of Income for taxable year 1993 which included the following:

<u>STATEMENT REGARDING ERRONEOUS REPORTING</u>
<u>OF ABANDONED SECURED PROPERTY</u>

The Partnership, Lowry Wells Investments, received a form 1099-A for 1993, indicating an abandonment of real property on December 15, 1993. This reporting is wholly inaccurate. A deed in lieu of foreclosure was delivered on May 27, 1994. The lender, Aid Association for Lutherans, erred in reporting the transaction[s] in 1993. A copy of an escrow statement issued by First American Title Insurance Company has been attached which indicates the transfer of title factually occurred on May 27, 1994.

The subject property has previously been transferred to Lowry Wells Limited Liability Company pursuant to a tax-free partnership division under IRC §708(b)(2)(B).

Lowry Wells Limited Liability Company will correctly report this 1994 event on a 1994 return and realize and recognize any gains (or losses) as is appropriate in that filing.

There is nothing in the record to indicate that any property was ever transferred to Lowry Wells Limited Liability Company (LLC).

Petitioners were advised by Rob Lambert in a Memorandum dated August 29, 1994, to file the 1993 Amended tax return with the expectation that the LLC would "hopefully" be treated as having corporate entity characteristics, but would preserve the passthrough attributes of a traditional partnership. This was based on the assumption that at the time of delivery of the deed by the LLC, the LLC would be insolvent for purposes of section 108, so that most of the gain realized on the Fitch Property transaction would be treated as cancellation of indebtedness income and therefore not taxable. At the time this advice was given, the Fitch Property transaction had already closed (on May 27, 1994), and the Certificate of Limited Liability Company for LLC had yet to be filed, which in fact took place on September 19, 1994. The Fitch Property was conveyed to AAL by the Partnership, not by the LLC.

Petitioners did not report the section 1231 gain on their 1994 tax return. The record does not contain their 1993 tax return.

By letter dated December 28, 1993, Bruce Stuart, Lowry Wells's attorney, with the consent of David Crist, attorney for AAL, requested that the Grant Deed in escrow be recorded on or after January 3, 1994, so that the closing would occur in tax year 1994.

The Partnership realized a section 1231 gain of $1,549,963 on the conveyance of the Fitch Property to AAL. Petitioners' proportionate share of the gain is $774,982.

## Discussion

### I. Year of Recognition of Gain Under Section 1231

Petitioners contend that the Partnership conveyance of the Fitch Property to AAL, and the cancellation of the Partnership indebtedness, occurred on December 15, 1993.

Respondent contends that the conveyance of the Fitch Property by the Partnership to AAL occurred in 1994, and that petitioners were required to recognize section 1231 gains in that year.

Since we agree with respondent that the section 1231 gain must be recognized in 1994, we need not address his additional

argument that petitioners are estopped by the rule of consistency from claiming that the section 1231 gain should be recognized for tax purposes in 1993.

Petitioners essentially base their argument on (1) the fact that the Grant Deed and the Covenant Not to Sue agreement are dated December 15, 1993, and (2) the fact that AAL issued a 1993 Form 1099-A, showing the "date of lender's acquisition" of the Fitch Property to be "12-15-93". Petitioners argue that all subsequent actions were for the benefit of AAL, and of no further concern to the Partnership.

Past decisions of this Court and California law, as applied to the facts of this case, do not support petitioners' argument that the transaction was completed in 1993. The escrow instructions, dated December 9, 1993, recite that they were being issued to the Title Company on behalf of AAL <u>and</u> the Partnership. The instructions were consented to by George H. Wells, signing as a general partner of "Lowry & Wells Investments, a California partnership." Also, as noted above, the Grant Deed recited that the Grantor and Grantee intend that the lien created by the Deed of Trust would not merge into the fee title being acquired by the Grantee. The Grant Deed further recites that no merger will occur until the Grantee executes and records a separate instrument specifically effecting such merger. These facts alone repudiate petitioners' contention that "The subsequent actions by

AAL in obtaining a title policy and recording the deed through 'their' escrow agent are not relevant to the question of the date when transfer of ownership was complete."  In fact, subsequent steps taken by all concerned in 1993 and 1994, and not by AAL alone, are very relevant to that question.

A transfer of property by deed in lieu of foreclosure constitutes a "sale or exchange" for Federal income tax purposes. Allan v. Commissioner, 86 T.C. 655, 659 (1986), affd. 856 F.2d 1169, 1172 (8th Cir. 1988).  In a given case, the test to be applied to determine whether a transaction is a closed one is a practical test, and the transaction should be regarded in its entirety.  Clodfelter v. Commissioner, 426 F.2d 1391 (9th Cir. 1970), affg. 48 T.C. 694 (1967).  Although other factors may be considered, passage of title is usually conclusive.  Id.  An exception is illustrated by our decision in Keith v. Commissioner, 115 T.C. 605 (2000), discussed infra pp. 14-15.

It seems beyond dispute that the title to the Fitch Property passed on May 27, 1994, when the Title Company was ready to issue a title policy acceptable to AAL and could file the deed for recordation, which it did on that date.  Previously, AAL and the Partnership had negotiated a settlement agreement in lieu of foreclosure whereby the Partnership would convey the Fitch Property to AAL as full settlement of the outstanding

indebtedness.  Before the settlement agreement had been negotiated, AAL had begun the process of foreclosure on the Deed of Trust.

At the time AAL agreed to accept a deed to the Fitch Property in lieu of foreclosure, the balance due on the secured Note substantially exceeded the fair market value of the Fitch Property, so that if foreclosure had proceeded, AAL could have pursued a deficiency judgment of a substantial amount against the partners, who were personally liable on the Note.  See Ghirardo v. Antonioli, 924 P.2d 996 (Cal. 1996).  Thus, to protect themselves against the possibility of a deficiency judgment, the partners required the Covenant Not to Sue.  Notwithstanding petitioners' assertion that the Covenant Not to Sue became immediately effective on December 15, 1993, the day it was signed, by its terms the Covenant Not to Sue was conditioned upon, among other things, the conveyance of the Fitch Property to AAL.  This could only take place upon satisfaction of the terms of the escrow.

The escrow instructions, dated December 9, 1993, refer, among other things, to a Settlement Agreement dated November 30, 1993, and the fact that "Borrower [the Partnership] has tendered to you [the Title Company] in escrow the Grant Deed (the 'Deed') from Borrower to Lender."  (Emphasis added.)  Reference is also made to the delivery to the Title Company of "an executed copy of

the Settlement Agreement and the documents executed by the parties thereto." Under California law, "An escrow involves the deposit of documents and/or money with a third party to be delivered on the occurrence of some condition." <u>Summit Fin. Holdings, Ltd. v. Contl. Lawyers Title Co.</u>, 41 P.3d 548, 551 (Cal. 2002) (quoting 3 Miller & Starr, Cal. Real Estate, sec. 6:1, pp. 2-3 (rev. 2000)).

In short, all of the documents signed in 1993, and upon which petitioners predicate their alleged 1993 fait accompli, are actually documents essential to a closing of title when all conditions precedent thereto had been satisfied, and the escrow could be closed.

On December 28, 1993, Bruce Stuart (Mr. Stuart), one of the Partnership's attorneys, wrote Ms. Darlene Longoria of the Title Company as follows:

> Dear Ms. Longoria:
>
> This letter is to advise you that with the consent of David Crist as attorney for the Aid Association for Lutherans, we request that the recordation of the Deed in the above-referenced escrow occur on or after January 3, 1994 so that the closing will occur in tax year 1994. Should you have any questions, please feel free to contact me.

In a letter dated September 1, 1994, to William Holt from Mr. Stuart, the latter recapitulated the Fitch Property transaction as follows:

Dear Bill:

This letter is to review the recent transaction between Lowry & Wells Investments and the Aids Association for Lutherans ("AAL"). AAL was the holder of a Promissory Note Secured by Deed of Trust on the Fitch Street Property owned by Lowry & Wells Investments ("L & W"). In late 1993 a settlement was negotiated between AAL and L & W whereby L & W would convey the property to AAL, together with all leases and tangible personal property, in return for which AAL would agree to accept such conveyance as a full settlement of the then outstanding indebtedness. Through joint instructions to escrow, the parties agreed that the closing would occur subsequent to December 31, 1993, and in fact the Deed conveying title to the property was recorded May 27, 1994.

(Mr. Holt is identified in a document stipulated by the parties as "the predecessor accountant".)

Petitioners quote sections 1055 and 1056 of the California Civil Code (West 1982) in support of their position that title to the Fitch Property passed on December 9, 1993, when the partners executed the warranty deed:

SEC. 1055. Presumption as to date of delivery

DATE. A grant duly executed is presumed to have been delivered at its date.

SEC. 1056. Delivery necessarily absolute

DELIVERY TO GRANTEE IS NECESSARILY ABSOLUTE. A grant cannot be delivered to the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery was made.

In quoting the above sections, petitioners overlooked Cal. Civ. Code sec. 1057 (West 1982), which provides:

SEC. 1057.  Delivery in escrow

> DELIVERY IN ESCROW.  A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and, on delivery by the depositary, it will take effect.  While in the possession of the third person, and subject to condition, it is called an escrow.

In this case, the Grant Deed was jointly delivered by the Partnership and AAL to the Title Company with the escrow instructions, so under section 1057 of the California Civil Code and California case law, title to the Fitch Property did not pass to AAL until performance of the conditions in the escrow instructions had been achieved.  It has long been held in California, as elsewhere, that delivery of an instrument in escrow conveys no title.  In re Chrisman, 35 F. Supp. 282 (S.D. Cal. 1940).  Consequently, the warranty deed was delivered to AAL in 1994 when the terms of the escrow were satisfied, and the deed was duly recorded, and not before.

Petitioners seek to bring their facts within those of Keith v. Commissioner, 115 T.C. 605 (2000), to show that a title closing is not necessary to establish a closed transaction.  The facts of Keith, however, are specifically relevant to a form of transaction under Georgia law known as a "contract for deed".  Georgia law normally construes a contract for deed as a device for passing equitable ownership, leaving the seller with essentially a security interest.  Id. at 614.

Under a contract for deed in Georgia, the buyer obtains a right to possession; an obligation to pay taxes, assessments, and charges against the property; a responsibility for insuring the property; a duty to maintain the property; a right to improve the property without the seller's consent; a bearing of the risk of loss; and a right to obtain legal title at any time by paying the balance of the full purchase price. All of these elements, short of transfer of title, were held in <u>Keith</u> to be sufficient for obtaining equitable ownership. The facts in the case before us do not establish that AAL obtained equitable ownership before title to the Fitch Property passed in 1994 by virtue of the recordation of the Grant Deed upon satisfaction of the escrow instructions.

For the foregoing reasons, we hold for respondent on this issue.

## II. Section 6662 Accuracy-Related Penalty

In determining that petitioners are liable for the section 6662 accuracy-related penalty, respondent determined that all of the underpayment of tax for 1994 and 1995 is due to negligence or disregard of rules or regulations, and that petitioners have not established that such underpayment was due to reasonable cause. Since the IRS examination in this case commenced before July 22, 1998, section 7491, relating to burdens of proof and production,

is not applicable, and petitioners bear the burdens of proof and production with respect to the penalty. <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791-792 (1972).

Section 6662(b) imposes an accuracy-related penalty in the amount of 20 percent of any underpayment that is attributable to one or more of the following: (1) Negligence or disregard of rules or regulations; (2) any substantial understatement of income tax; (3) any substantial valuation misstatement. Section 6662(d)(1) defines substantial understatement as an amount that exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000.

Section 6662(d)(2)(B) provides that an understatement does not include any item on the taxpayer's return if there existed substantial authority for the taxpayer's treatment of that item, or if the relevant facts affecting the treatment of that item were adequately disclosed on the taxpayer's return or an attached statement, and there was a reasonable basis for the taxpayer's treatment of that item.

Section 6664(c) provides an exception to the accuracy-related penalty if the taxpayer can show that there was reasonable cause for the underpayment and that the taxpayer acted in good faith with respect to the underpayment. A taxpayer's good faith and reasonable reliance on the advice of an independent professional as to the tax treatment of an item may

establish that the taxpayer was not negligent and may satisfy the reasonable cause exception of section 6664(c). Section 1.6662-3(a), Income Tax Regs.

Petitioners contend that the section 6662(a) penalty should not be imposed: (1) Because they relied on professional advisers for the preparation of their 1994 and 1995 returns; and (2) because the test for adequate disclosure should properly be applied to the Partnership's return, and not to petitioners' returns. The latter argument was raised for the first time in petitioners' reply brief.

Petitioners argue that they relied upon a C.P.A. for advice as to how the Fitch Property transaction should be reported, and that he was unaware of the existence of the Covenant Not to Sue Agreement when he filed the partnership return for 1994. All the facts in the record lead to the conclusion that petitioners did not report the transaction on their 1993 return, which is not in the record. Neither was the transaction reported on petitioners' 1994 return.

Petitioners contend that the reporting requirement was satisfied by the fact that the "reconveyance" was reported by the LLC, "a related partnership", as a sale or exchange of property

used in a trade or business.  However, since the LLC never owned the Fitch Property, any reconveyance reported by the LLC was wholly fictitious.

As part of tax planning advice from Rob Lambert, petitioners and the Partnership were advised to report the gain from the sale of the Fitch Property as cancellation of indebtedness income on their 1994 return, which is not recognized after the application of section 108.  Petitioners simply failed to report the transaction on any tax return.

As noted previously, the Partnership filed an amended 1993 tax return in which it stated that a deed in lieu of foreclosure was delivered on May 27, 1994, and that the Form 1099-A issued by AAL showing that the transaction occurred in 1993 was "wholly inaccurate" and that AAL erred in reporting the transaction in 1993.  It further alleged that the subject property had been previously transferred to the LLC pursuant to a tax-free partnership division and that the LLC would correctly report the transaction.  In reliance on the advice received from Rob Lambert, the LLC, on its Form 1065 for 1994, reported the section 1231 gain as cancellation of debt income excluded from gross income pursuant to section 108(a)(1)(B) by applying the insolvency test at the entity level; i.e., the LLC was insolvent

when the Fitch Property was conveyed, and therefore the gain realized was not taxable.  Nothing in the record supports this fabrication.

The facts in this case show that the Fitch Property was conveyed to AAL by the Partnership, not the LLC, and as noted previously, the Certificate of Limited Liability Company of the LLC was not even filed in the Office of the Secretary of State (Delaware) until September 19, 1994, at least 4 months after the Fitch Property had been conveyed by the Partnership to AAL.

We conclude that petitioners have failed to meet their burden of proving that they acted with reasonable cause and in good faith.  Furthermore, based upon our holding on the first issue in this case and concessions by petitioners, petitioners owe taxes for 1994 and 1995 well in excess of the level constituting a substantial understatement.  We therefore sustain respondent's determination that petitioners are liable for the accuracy-related penalty.

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above we find them to be irrelevant, moot, or without merit.  All of petitioners' objections on the ground of relevancy contained in the Stipulation of Facts have been considered and are denied.

Decision will be entered

for respondent.